W. R. H., INC., a Utah corporation, and W. Reid Horne, individually, and for and on behalf of Townhouse II, a limited partnership, Plaintiffs and Appellants,

v.

ECONOMY BUILDERS SUPPLY, a Utah corporation, Gene's Building Materials, Inc., a Utah corporation, Publishers Paper Co., a Delaware corporation, and Puget Sound Plywood, Inc., a Washington cooperative association, Defendants and Respondents.

No. 16712.

Supreme Court of Utah.

June 24, 1981.

Elliott J. Williams, Bruce H. Jensen, Salt Lake City, for plaintiffs and appellants.

Charles Craig Brown, Boyd M. Fullmer, Dennis McCarthy, Alan L. Sullivan, Salt Lake City, for defendants and respondents.

MAUGHAN, Chief Justice:

The plaintiff appeals the District Court's entry of summary judgment in favor of the defendant manufacturers and retailers. The District Court's granting of summary judgment was based on its finding that the plaintiffs' claims for breach of warranty were barred by the applicable statute of limitations and that the plaintiffs' allegations of negligent manufacture failed to state a claim upon which relief could be granted. We reverse and remand the matter to the District Court for a trial on the merits. All statutory references are to Utah Code Annotated, 1953, as amended.

On appeal from a summary judgment of dismissal, this Court reviews the record in the light most favorable to the appealing party.[1] The record in the present case reveals that during the latter part of 1970, the plaintiff, W. Reid Horne, hereinafter "Horne," went to defendant Economy Builders Supply, hereinafter "Economy," to inquire about the purchase of exterior siding for use in the construction of two apartment complexes.[2] At Economy he spoke

---

1. *Pioneer Savings and Loan Assoc. v. Pioneer Finance and Thrift Co.*, 18 Utah 2d 106, 417 P.2d 121 (1966); *Whitman v. W. T. Grant Co.*, 16 Utah 2d 81, 395 P.2d 918 (1964).

2. Horne is a licensed building contractor and his company, plaintiff W. R. H., Inc., a Utah corporation, built the apartment complexes. Horne is the sole owner of one of the complex-

with Dave Schauerhamer, who was an owner and manager of that business. Horne contends Dave Schauerhamer gave him "quite a sales pitch" on a plywood siding called Mahogason.[3] Horne alleges he purchased the siding only after he looked at samples which were stamped "exterior", read the manufacturer's promotional literature, and was told by Schauerhamer that it was "lifetime siding."

Between 1970 and 1972, Horne purchased large quantities of Mahogason from Economy. Purchases were also made from Gene's Building Materials, hereinafter "Gene's" because of variations in price and availability. However, after installing the siding in his construction projects, Horne discovered that some of the siding was delaminating. Economy and Gene's were notified of the problems and allegedly assured Horne that the problem would be rectified.

On August 14, 1978, plaintiffs commenced this action, claiming breach of warranty and negligence in the manufacture and sale of the siding. Joined as defendants were the retailers, Economy and Gene's, and the manufacturers, Publisher Paper Company and Puget Sound Plywood, Inc. In their amended complaint, plaintiffs sought damages from the alleged negligent manufacture of the siding for (1) the difference between the value of the siding accepted and the value it would have had if it had been as warranted; (2) consequential damage for cost of labor and materials to replace the defective siding; and (3) consequential damages for rental income and profits lost as a result of the deteriorated appearance of the structures on which the siding was used.

On January 30, 1979, plaintiffs submitted written interrogatories to the defendant manufacturers. One of the manufacturers never filed answers to the interrogatories and the other filed allegedly incomplete answers on June 18, the day before they collectively filed a motion for summary judgment. Similar motions were thereafter filed by defendant retailers, all of which were heard on June 29, 1979.

Pursuant to Rule 56(f), Utah Rules of Civil Procedure, plaintiffs requested an order to compel discovery and an order postponing the hearing on defendants' motions for summary judgment, both of which were denied. The trial court entered summary judgment in favor of all defendants and against all plaintiffs on the grounds that the claims for breach of warranty were barred by the statute of limitations and that the claims of negligent manufacture failed to state a cause of action upon which relief could be granted. Plaintiffs thereafter filed a motion to alter, amend or vacate judgment and a motion for relief from judgment, which were denied by the trial court. On appeal, plaintiffs seek reversal of the summary judgments and remand for a trial on the merits.

On appeal, plaintiffs contend as follows: (1) The trial court erred in dismissing the cause of action for negligent manufacture; (2) the court abused its discretion by refusing to postpone consideration of defendants' motions for summary judgment; and (3) the court erroneously held, as a matter of law, that plaintiffs were not given a warranty of future performance.

The defendants support their contention that economic losses are not recoverable in the present action under a negligence theory by reference to a general statement in Dean Prosser's hornbook on tort law[4] and the Idaho case of *Clark v. International Harvester Co.*[5] Both references are inappropriate for the proper resolution of the present question.

es, and is the general partner of plaintiff Townhouse II, a limited partnership, which is the sole owner of the other complex.

3. Mahogason was a new plywood siding with a mahogany overlay, allegedly represented by Schauerhamer as being a good product in use "all over," which cost less to install than other types of siding.

4. W. L. Prosser, The Law of Torts, Sec. 101, p. 665 (4th Ed. 1971).

5. *Clark v. International Harvester Co.*, 99 Idaho 326, 581 P.2d 784 (1978).

Concerning economic loss in negligence actions Dean Prosser's text states:

"There can be no doubt that the seller's liability for negligence covers any kind of physical harm, including not only personal injuries, but also property damage to the defective chattel itself."

\*  \*  \*  \*  \*  \*

". . . and there is now general agreement that there may be recovery not only for damage to the defective chattel itself, or to other products made from it, but also to other property in the vicinity, . . ." [Footnotes omitted] [6]

In support of this latter statement Dean Prosser cites to the case of *Spence v. Three Rivers Builders & Masonry Supply.*[7] That case, which is factually quite similar to the present one, involves an action against a manufacturer of cinder blocks for damages resulting from the deterioration of the blocks. Shortly after the cinder blocks were purchased and used in the construction of tourist cabins by the plaintiff, they began to crack, chip and "explode into a popping series of minute craters."[8] This latter action resulted in unsightly red and yellow stains travelling down the blocks which seriously detracted from the exterior and interior appearance of the cottages. Although explaining that the buildings had not become unsound structurally the Michigan Supreme Court allowed the recovery of damages for the defective manufacture of the blocks under a negligence theory.

■ Thus, the entirety of Prosser's analysis in Section 101 conditions and explains the statement that "purely economic interests are not entitled to protection against mere negligence." That statement is inapplicable in situations such as the present where the alleged defective manufacture results in the deterioration of the product. Where some damage to the product results from the negligence of the manufacturer, the consumer's damages are not "purely economic," or economic loss alone, and actions to recover all damages resulting from the product's deterioration should be allowed under a negligence theory.[9]

The defendants call attention to the Idaho Supreme Court's decision in *Clark v. International Harvester.*[10] In *Clark,* the Idaho Supreme Court limited its analysis to the "very narrow question whether the purchaser of a defective product who has not sustained any property damage or personal injury, but only suffers economic losses, can recover those losses in a negligence action against the manufacturer."[11] That case is factually distinguishable from the present one because the plaintiff in *Clark* merely alleged the negligence of the manufacturer resulted in a product which could not fulfill his production expectations.

Under that factual setting, the Idaho court was justified in relying on the rationale presented in the California case of *Seely v. White Motor Co.*[12] In *Seely,* Chief Justice Traynor writing for the majority of the court, refused to extend the concept of strict liability to include economic damages resulting from the failure of a vehicle manufactured by the defendant to meet the specific business needs of the plaintiff. Relying on the California court's analysis and the factual circumstances presented, the Idaho court concluded:

"The law of negligence requires the defendant to exercise due care to build a tractor that does not harm person or property. If the defendant fails to exercise such due care it is of course liable for

6.   Prosser, supra note 4, at 665, 666.

7.   *Spence v. Three Rivers Builders & Masonry Supply,* 353 Mich. 120, 90 N.W.2d 873 (1958).

8.   Id. at 874.

9.   See *Shields v. Morton Chemical Co.,* 95 Idaho 674, 518 P.2d 857 (1974); cf. *Seely v. White Motor Company,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145, 151 (1965).

10.   *Clark v. International Harvester Co.,* supra note 5.

11.   Id. at 790–791.

12.   *Seely v. White Motor Company,* supra note 9.

the resulting injury to person or property as well as other losses which naturally flow from the injury. However, the law of negligence does not impose on International Harvester a duty to build a tractor that plows fast enough and breaks down infrequently enough for Clark to make a profit in his custom farming business." [13]

That decision should be limited to the express problem at which it is directed and not applied to the distinct problem presented by the present fact situation.

Whether or not a manufacturer should be held to a standard of strict liability for economic losses resulting from the failure of his product to fulfill the commercial needs of the purchaser is not at issue in the present case. In this case we are not asked to apply a strict liability analysis to the manufactured defects. Rather, the plaintiff in this case alleges the negligent manufacture of the siding has resulted in damages to him.[14]

Expansion of the strict liability doctrine and the attention it has received from both courts and commentators has obscured other approaches to products liability actions sounding in tort. However, some courts have recognized the valid distinction which remains between strict liability and negligent manufacture actions.[15] Accepting this distinction several jurisdictions have allowed recovery for economic losses in negligent manufacture cases while denying such recovery under strict liability theories.[16] The basis for the application of classic negligence concepts to protect a purchaser from economic losses was aptly explained in *State ex rel. Western Seed Production Corp. v. Campbell*,[17] where the Oregon Supreme Court stated:

> "The manufacturer should have a duty of exercising due care to avoid foreseeable harm to the users of his products. As stated by one writer, economic loss from defective products is 'within the range of reasonable manufacturer foresight * * * [and this foreseeability] should raise at least a duty of due care unless some compelling economic or social or administrative reason dictates otherwise.' ... Not being aware of any such reasons, we hold that [the] complaint states a cause of action in tort ...." [18]

The Oregon Court supported their extension of negligence law into an area traditionally subject to contract concepts by explaining:

> "A buyer's desire to enjoy the benefit of his bargain is not an interest which tort law has traditionally been called

---

13. *Clark v. International Harvester Co.*, supra note 5, 581 P.2d at 794.

14. However, in the leading case of *Santor v. A and M Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305 (1965) the New Jersey Supreme Court allowed the recovery of economic losses under a strict liability rationale in a factual setting very similar to the present one. The plaintiffs in *Santor* purchased a carpet produced by the defendant. Shortly after installation in the plaintiff's building, the carpet began to develop unusual lines. In allowing the plaintiff damages for the defect the court explained: "And, although the doctrine (strict liability) has been applied principally in connection with personal injuries sustained by expected users from products which are dangerous when defective, we reiterate our agreement with *Randy Knitwear, Inc. v. American Cyanamid Company*, supra, 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399 (1962), that the responsibility of the maker should be no different where damage to the article sold or to other property of the consumer is involved." Id. 207 A.2d at 312. The New Jersey Court then concluded that, "... if the article is defective and the defect is chargeable to the manufacturer, his must be the responsibility for the consequent damages or injury." Id. 207 A.2d at 313.

15. See *Salmon Rivers Sportsmen Camps, Inc. v. Cessna Air Co.*, 97 Idaho 348, 544 P.2d 306, 310 (1975) ("A potential products liability action, moreover, must tie the type of recovery sought to the legal grounds for the action: negligence, strict liability in tort, or breach of express or implied warranty. See, e. g., R. Hursh & H. Bailey, 1 American Law of Products Liability 2d, Secs. 2–4 (1974)").

16. See *State ex rel. Western Seed Production Corp. v. Campbell*, 250 Or. 262, 442 P.2d 215 (1968); *Nobility Homes of Texas, Inc. v. Shivers*, Tex., 557 S.W.2d 77 (1977); *Berg v. General Motors Corp.*, 87 Wash.2d 584, 555 P.2d 818 (1976).

17. *State v. Campbell*, supra note 16.

18. Id. 442 P.2d at 218.

upon to protect. It is in this tradition that we have declined, in the absence of fault, to impose upon remote sellers strict liability to insure customer satisfaction. The statutory sales law has set out a scheme of warranty liability in which the element of fault is irrelevant as long as the buyer proceeds against his seller. Fault becomes relevant where the loss of the benefit of the bargain is traceable to the negligence of a remote seller. Recovery for such negligence, because it is grounded upon fault, falls within traditional tort rules and presents no serious conflict with the statutory system of non-fault recovery under the Uniform Commercial Code." [19]

■ The economic damages suffered by W. R. H. Inc. are recoverable in conjunction with the property damage incurred, and the reasoning of the Oregon Supreme Court and the allowance of a cause of action for negligent manufacture to recover those damages, is more appropriate under the present factual circumstances than the application of the strict liability analysis found in *Clark v. International Harvester.* Therefore, we reverse the District Court's ruling and grant the plaintiffs an opportunity to present proof of the defendants' negligent manufacture of the siding.

■ Because we conclude genuine issues of material fact exist which precludes entry of summary judgment, we do not need to address the question of whether the trial court abused its discretion in refusing to postpone ruling on defendants' motions for summary judgment.[20] Specifically, factual issues are raised by the pleadings concerning the negligent manufacture of the siding and the plaintiffs' claims relating to warranties of future performance.

Whether warranties of future performance were given is crucial to plaintiffs' cause of action because if none were given, the limitation period has clearly run. It is undisputed that all of the siding had been delivered by 1972 and that the complaint

was not filed until 1978. In pertinent part, 70A–2–725 provides:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . .

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

\* \* \* \* \* \*

In its findings of fact, the trial court acknowledged that plaintiffs' claims of warranty were based on the following:

"(a) some of the siding purchased by plaintiffs bore the stamped word 'exterior'; (b) some of the plywood bore a stamp of approval of the American Plywood Association, of which defendant manufacturers have been members; (c) a leaflet obtained by plaintiffs at the time of sale indicated in some form of words that the plywood was 'exterior' and would weather as well as other unspecified products."

The court ruled that no warranty of future performance was given and therefore that the cause of action accrued at the time of delivery. Because the facts are disputed, it was error for the trial court to rule as a matter of law in granting defendants' motions for summary judgment. We therefore reverse and remand the matter for a trial on the merits of the plaintiffs' negligence and warranty causes of action.

WILKINS, J.,\* concurs.

STEWART, J., and CROCKETT, Retired J.,\* concur in the result.

HALL, Justice (concurring and dissenting):

I concur with that portion of the main opinion which remands the case for trial of

---

**19.** Id. 442 P.2d at 218.

**20.** Rule 56(c), Utah Rules of Civil Procedure.

\* Crockett, Retired Justice, and Wilkins, Justice, acted on this case prior to leaving the court.

the claims relating to warranties of future performance. However, I dissent from that portion of the opinion which holds that the damages suffered by plaintiffs are recoverable on the theory of negligence.

The main opinion aptly quotes Dean Prosser,[1] but excerpts out the crucial language. I agree with the general rule that liability for negligence includes personal injury and damage to the chattel itself. Prosser goes on, however, to state as follows:

> But where there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of the value or use of the thing sold, or the cost of repairing it, the courts have adhered to the rule . . . that purely economic interests are not entitled to protection against mere negligence, and so have denied the recovery.[2]

The main opinion seems to accept the notion that "purely economic interests" are not recoverable in tort, but goes on to say that deterioration of a product is properly to be treated as "property damage."

The general rule is that when the damage to a product results from deterioration, internal breakage, or other nonaccidental causes, it is properly to be treated as economic loss.[3] In *Fentress v. Van Etta Motors*,[4] it was held that an action will lie for damages which result from an accident caused by the negligent manufacture of an article, although the damages are confined to the destruction or harm of the article itself. This holding was then explained and qualified as follows: In order to recover for the negligent manufacture of an article, an accident must have resulted;[5] furthermore, the accident must be a casualty involving some violence or collision with external objects, not a mere marked deterioration, or even a complete ruin brought about by internal defects. Mere deterioration is therefore a "purely economic loss," under commonly accepted notions of product liability.

In the instant case, plaintiffs sought to recover the following:

1. The difference between the value of siding accepted and the value it would have had if it had been as warranted;

2. Consequential damage for cost of labor and materials to replace the defective siding; and

3. Consequential damages for rental income and profits lost as a result of the deteriorated appearance of the structures on which the siding was used.

It is my opinion that because of the nature of these *economic* claims, plaintiffs' recovery can be based only on warranty. As stated in *Seely v. White Motor Company*,[6]

> Although the rules of warranty frustrate rational compensation for physical injury, they function well in a commercial setting. . . . These rules determine the quality of the product the manufacturer promises and thereby determine the quality he must deliver.

> \*    \*    \*    \*    \*    \*

> A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will.

Notwithstanding the attempt made in the main opinion to distinguish the case of *Clark v. International Harvester*,[7] I view

1. W. L. Prosser, The Law of Torts, Sec. 101 (4th ed. 1971).

2. *Id.* at p. 665. See also, *Seely v. White Motor Company*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), which states that "in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone."

3. 66 Columbia Law Review 917 (1966).

4. 157 Cal.App.2d Supp. 863, 323 P.2d 227 (1958).

5. Citing *Trans World Airlines, Inc. v. Curtiss-Wright Corp.*, 1 Misc.2d 477, 148 N.Y.S.2d 284 (1955).

6. *Supra*, note 2.

7. 99 Idaho 326, 581 P.2d 784 (1978).

the holding in that case as having direct application in resolving the issue presented in this case. In *Clark*, the plaintiff buyer of a tractor urged the Idaho Supreme Court to adopt the rule that a remote manufacturer could be liable for economic damages in negligence. In ruling that recovery of economic damage will not be allowed in products liability cases sounding in tort, the Court made the following observations:

> Since the turn of the century the law of tort has undergone unprecedented change as courts have endeavored to adapt it so as to satisfy the demands of the commercial, marketing and manufacturing practices of this era. However, we recognize that the courts have not been alone in working to develop laws appropriate to the field of products liability. The legislature has enacted the Uniform Commercial Code.... Chapter 2 of that act ... contains a comprehensive and finely tuned statutory mechanism for dealing with the rights of parties to sales transactions with respect to economic losses. In the continuing development of the tort law of this state, it is important that we be cognizant of the legislature's actions in this area.

> \*   \*   \*   \*   \*   \*

The Idaho legislature, and indeed the legislatures of nearly every state in the Union, have adopted the UCC which carefully and painstakingly sets forth the rights between parties in a sales transaction with regard to economic loss. This Court, in the common law evolution of the tort law of this state, must recognize the legislature's action in this area of commercial law and should accommodate when possible the evolution of tort law with the principles laid down in the UCC.

For this Court to rule to the contrary, and thus allow recovery for purely economic

loss in negligence actions, tends not only to confuse the basic concepts of products liability, but also circumvents the provisions of the Uniform Commercial Code,[8] which amply provide the procedural method for the recovery of such losses within an appropriate time frame.

I would therefore affirm the judgment of the district court on the claim of negligence.[9]

---

8.  U.C.A., 1953, 70A–1–101 *et seq.*, particularly, Chapter 2 thereof dealing with Sales.

9.  The district court granted summary judgment in favor of defendants on *all* claims of negligence on the ground that the losses were not foreseeable. Plaintiffs are correct in their assertion that the foreseeability ruling should not

have applied to the claims for the value of the siding and for the costs of repair. Nevertheless, we affirm the trial court if we can do so on any proper ground, even if the court below assigned an incorrect reason for its ruling. *Allphin Realty, Inc. v. Sine*, Utah, 595 P.2d 860 (1979).