**Robert D. MAACK and Judith D. Maack, Plaintiffs and Appellants,**

v.

**RESOURCE DESIGN & CONSTRUCTION, INC., a Utah corporation; and Timothy Hoagland, an individual, Defendants and Appellees.**

**Robert D. MAACK and Judith D. Maack, Plaintiffs and Appellants,**

v.

**Robert K. JARVIK, M.D., Defendant and Appellee.**

**No. 930064–CA.**

Court of Appeals of Utah.

May 16, 1994.

---

**572**

Mark A. Larsen, Salt Lake City, for appellants.

Kurt M. Frankenburg, Salt Lake City, for appellees Resource Design and Timothy Hoagland.

Robert K. Jarvik, New York City, appellee pro se.

Before BENCH, GREENWOOD and GARFF,[1] JJ.

---

1. Senior Judge Regnal W. Garff, acting pursuant to appointment under Utah Code Ann. § 78–3–24(10) (1992).

GREENWOOD, Judge:

Judith D. and Robert D. Maack (Maacks) appeal the trial court's orders granting two motions for summary judgment, one brought by defendants Resource Design & Construction, Inc. (Resource Design) and Timothy Hoagland, and the second by defendant Dr. Robert K. Jarvik. We affirm.

## FACTS

Resource Design is in the business of contracting to construct custom residential homes and light commercial buildings. Timothy Hoagland has been a shareholder and president of Resource Design since 1986. In early 1986, Dr. Jarvik contacted Resource Design concerning his designs for a personal residence to be located at 4326 White Way in Salt Lake City. Resource Design recommended that Jarvik retain a professional house designer to prepare the plans. After these plans were completed, Jarvik contracted with Resource Design to construct the home. The home, completed approximately one year later in July 1987, passed all building inspections. Jarvik was very satisfied with Resource Design's work and made the final payment due under the contract.

Due to a job change, Jarvik moved to New York City in the summer of 1987 and listed the home for sale. Jarvik arranged for someone to live in the house during the winter of 1987–88 and rented the home for a short period during the summer of 1988. In July 1988, the Maacks [2] contacted the listing agent on Jarvik's house and entered into an Earnest Money Sales Agreement (the Agreement) for the full asking price of $595,000. The Agreement stated that the Maacks were purchasing the home "as is," without any warranties as to its condition.

The Maacks did not have the home inspected before they agreed to purchase it, nor did they make the purchase contingent upon a satisfactory inspection report. They allege that they concluded an inspection was unnecessary based upon a representation made by Jarvik's real estate agent, Maclyn Kesselring. Although the parties disagree on the timing of Kesselring's statement—the

Maacks claim it was before the signing of the Agreement while Kesselring claims it was after—it is undisputed that Kesselring told the Maacks that the house was subject to a one year builder's warranty covering defects, material, and workmanship. The Maacks did not ask to review the builder's warranty, nor did they ask for particular details concerning the warranty. The sale was later completed and the Maacks moved in.

In late 1988 and early 1989, Mr. Maack contacted Resource Design on several occasions concerning water leakage into the house. Resource Design attempted to resolve the problems over the course of approximately one year, at which point it refused to do any further work without compensation.

The parties dispute whether the leakage was caused by defects in the construction of the residence; however, they do not contest the fact that the stucco covering the exterior of the home was not the stucco initially requested by Jarvik. Jarvik's plans for the house specified that the exterior finish for the residence be a two-coat synthetic acrylic stucco. Hoagland claims that he discussed the specified stucco's high cost with Jarvik and that Jarvik agreed that a less expensive cement-based stucco could be substituted. Hoagland further claims that he described to Jarvik the major deficiencies associated with cement-based stucco, namely that it has potential for cracking, requires the use of expansion joints, and may not be appropriate in freezing climates. Jarvik allegedly responded that he did not mind the cracking and preferred for aesthetic reasons that Resource Design not employ expansion joints. Jarvik denies that this discussion with Hoagland occurred.

On June 1, 1990, the Maacks filed a complaint against Resource Design and Hoagland alleging negligent design and construction, breach of express and implied warranties, and negligent and intentional misrepresentation. Resource Design and Hoagland counterclaimed for breach of contract, unjust enrichment and conversion stemming from the uncompensated repair work done for the

2. Robert Maack is a licensed attorney.

Maacks. On October 25, 1991, the trial court held a hearing on Resource Design and Hoagland's motion to dismiss the breach of warranty and misrepresentation claims. Based upon the lack of privity of contract between the parties, the trial court dismissed the express warranty claim. The trial court also dismissed the implied warranty of habitability claim on the grounds that Utah has limited the scope of this warranty to landlord/tenant relationships. With respect to the negligent and intentional misrepresentation claims, the court permitted the Maacks to amend their complaint to allege these claims with the required specificity.

The Maacks filed their First Amended Complaint on November 4, 1991, claiming negligence, strict liability, res ipsa loquitur, and negligent and/or intentional misrepresentation. Resource Design and Hoagland filed a third-party claim against Jarvik and the Maacks filed a separate lawsuit against Jarvik. The trial court subsequently consolidated the two cases. On May 6–7, 1992, the trial court heard argument on Resource Design and Hoagland's motion for summary judgment and on Jarvik's motion for summary judgment. The trial court entered orders granting both motions and this appeal followed.

## STANDARD OF REVIEW

■ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R.Civ.P. 56(c). When evaluating a motion for summary judgment, "a court must consider all of the facts and evidence presented, and every reasonable inference arising therefrom, in a light most favorable to the party opposing the motion." *Katzenberger v. State*, 735 P.2d 405, 408 (Utah App.1987). Because entitlement to summary judgment is a question of law, we review the trial court's ruling with no deference. *Higgins v. Salt Lake County*, 855 P.2d 231, 235 (Utah 1993).

## ANALYSIS

### Appeal from Order Granting Summary Judgment to Jarvik

The Maacks' complaint against Jarvik set forth six claims for relief: breach of contract, general equitable relief, negligent misrepresentation, fraudulent concealment, nondisclosure, and breach of the duty of good faith and fair dealing. These claims arose from the Maacks' allegations that (1) Jarvik's real estate agent, Maclyn Kesselring of Eagar & Company, represented to them that a one year builder's warranty existed on the property, and (2) Jarvik informed the Maacks about certain defects in the stucco on the parapets around the garage, but failed to disclose other defects in the stucco allegedly known to him.

The trial court, in granting the motion for summary judgment, entered a Rule 52 Statement of Grounds for Order in which it set forth the undisputed facts and its conclusions of law. *See* Utah R.Civ.P. 52(a). The trial court concluded that the Agreement was binding on the Maacks as it states that the seller makes no warranties beyond those specifically enumerated, the property is sold "as is," and the Agreement is to constitute the entire contract between the parties and "supersedes and cancels any and all prior negotiations, representations, warranties, understandings, or agreements between the parties." The Agreement also states, "There are no oral agreements which modify or affect this agreement."

The court further ruled that the Maacks' conduct in failing to ask for a copy of the alleged builder's warranty and in failing to obtain an inspection fell below the level of ordinary diligence. The Rule 52 Statement observes that "[p]laintiffs' failure to ask for a copy of the 'builder's warranty' and failure to condition their offer to purchase the Home on the existence of a 'builder's warranty' indicate that Plaintiffs did not treat the representation as material and did not rely upon the representation when they purchased the Home."

■ On appeal, the Maacks contend that their claims of misrepresentation, fraudulent

concealment, and nondisclosure should not have been dismissed and further, that the contract doctrine of merger does not preclude these claims.[3]

The trial court's ultimate conclusion supporting summary judgment for Jarvik was that the Agreement's integration clause precludes consideration of any statements, non-statements, or agreements not expressly included in the Agreement. Therefore, the Agreement's "as is" provision controls and prevents any consideration of parol evidence concerning a builder's warranty or defects in the house. This conclusion, however, is subject to an exception noted in Utah caselaw. In *Lamb v. Bangart*, 525 P.2d 602 (Utah 1974), the Utah Supreme Court held that notwithstanding the merger doctrine, "a contract clause limiting liability will not be applied in a fraud action. The law does not permit a covenant of immunity which will protect a person against his own fraud on the ground of public policy." *Id.* at 608. Similarly, in *Union Bank v. Swenson*, 707 P.2d 663 (Utah 1985), the supreme court again held that fraud is an exception to the parol evidence rule:

> The parol evidence rule as a principle of contract interpretation has a very narrow application. Simply stated, the rule operates in the absence of fraud to exclude contemporaneous conversations, statements, or representations offered for the purpose of varying or adding to the terms of an *integrated* contract....

This general rule as stated contains an exception for fraud. Parol evidence is admissible to show the circumstances under which the contract was made or the purpose for which the writing was executed. This is so even after the writing is determined to be an integrated contract. Admitting parol evidence in such circumstances avoids the judicial enforcement of a writing that appears to be a binding integration but in fact is not.

"What appears to be a complete and binding integrated agreement may be a forgery, a joke, a sham, or an agreement without consideration, or it may be voidable for fraud, duress, mistake, or the like, or it may be illegal. Such invalidating causes need not and commonly do not appear on the face of the writing."

*Id.* at 665 (citing Restatement (Second) of Contracts § 214 cmt. c (1981)).

In addition, many other courts have "held or recognized that an 'as is' provision in a contract for the sale of realty does not bar a vendee's claim based on allegations of fraud, misrepresentation, or nondisclosure." Frank J. Wozniak, Annotation, *Construction and Effect of Provision in Contract for Sale of Realty by Which Purchaser Agrees to Take Property "As Is" or in Its Existing Condition*, 8 ALR 5th 312, 328 (1992). While the Maacks assert fraud as an exception to the "as is" and integration clauses in this case, they have not briefed whether negligent misrepresentation is also an exception, nor have they differentiated between fraudulent nondisclosure and fraudulent concealment. *See Kaye v. Buehrle*, 8 Ohio App.3d 381, 457 N.E.2d 373, 376 (1983) (holding that "as is" clause bars claim for fraudulent nondisclosure but permits claim for "positive" fraud). Given the lack of briefing, we do not address these issues. However, for purposes of our holding in this case we assume, without deciding, that the Maacks' claims of negligent misrepresentation, fraudulent concealment, and failure to fully disclose would be exceptions to the "as is" and integration clauses of the Agreement. Accordingly, we proceed to analyze each of the Maack's claims against Jarvik in light of any relevant parol evidence associated with these claims presented to the trial court in opposing the motion for summary judgment.

### 1. Negligent misrepresentation

The Maacks predicate their negligent misrepresentation claim on Kesselring's state-

---

**3.** The Maacks also appeal on grounds of "general equitable principles" and breach of contract. However, the breach of contract issue was not briefed and the issue of general equitable relief was not raised until the reply brief. " '[T]he rule is well settled that the court will not consider issues raised for the first time in a reply brief.' "

*State v. Phathammavong*, 860 P.2d 1001, 1004 (Utah App.1993) (quoting *White v. Kent Medical Ctr. Inc.*, 61 Wash.App. 163, 810 P.2d 4, 8 (1991)). It is equally well settled that this court need not address issues that a party has not briefed.

ment, allegedly made prior to the time the Maacks signed the Agreement, that a one-year builder's warranty existed on the property.[4] The Utah Supreme Court has described the tort of negligent misrepresentation as follows:

> [T]he tort of negligent misrepresentation, which provides that a party injured by *reasonable reliance* upon a second party's careless or negligent misrepresentation of a material fact may recover damages resulting from that injury when the second party had a pecuniary interest in the transaction, was in a superior position to know the material facts, and should have reasonably foreseen that the injured party was likely to rely upon the fact.

*Price–Orem Inv. Co. v. Rollins, Brown & Gunnell,* 713 P.2d 55, 59 (Utah 1986) (emphasis added). It is conceded that Ms. Kesselring made a misrepresentation, which we assume for purposes of summary judgment was made prior to the time the Maacks signed the Agreement, regarding the existence of a one-year builder's warranty. Further, Kesselring had a pecuniary interest in the transaction and was presumably in a superior position to know the material facts because she was the real estate agent selling the home. The key question, however, is whether the Maacks' reliance on Kesselring's misrepresentation was *reasonable.* The trial court concluded that a reasonable person under these circumstances would have asked more details about the warranty and would have requested a copy of the warranty for review.

The trial court relied upon *Klas v. Van Wagoner,* 829 P.2d 135 (Utah App.), *cert. denied,* 843 P.2d 1042 (Utah 1992) in reaching its decision. In *Klas,* the plaintiff told his former wife that if she could find a buyer willing to purchase his house at a price and upon terms acceptable to him, she would receive a finder's fee of three percent of the gross sale price. The defendants in *Klas* offered $175,000 for the home. Before the parties signed the Earnest Money Sales

Agreement, the defendants asked the plaintiff's former wife about appraisals of the property. She was not a real estate agent and assumed that "appraisals" included rough estimates furnished by three acquaintances in the real estate or mortgage lending business. Therefore, she told the defendants that the property had appraised at between $170,000 to $192,000. The defendants did not request to see these appraisals until after they had signed the Agreement and after an appraiser for the defendants' bank had valued the property at only $137,000. The plaintiff responded to this request by supplying the defendants with only one formal written appraisal, that had been prepared before the Klases' divorce, which valued the property at $165,000.

The defendants notified the plaintiff of their withdrawal of the offer to purchase the property and requested the return of their earnest money deposit. The plaintiff refused, the property was later sold for $160,000, and the plaintiff sued the defendants for the difference between the Agreement price and the price the house eventually sold for.

The *Klas* defendants claimed they were entitled to rescission of the contract based upon unilateral mistake. In addition, they counterclaimed on grounds of fraud, mutual mistake of fact, and detrimental reliance. The trial court ordered rescission of the contract and this court reversed, finding that the elements of unilateral mistake had not been established. Of particular relevance to this case is this court's discussion of the third element of unilateral mistake—ordinary diligence. This element requires that "[g]enerally the mistake must have occurred notwithstanding the exercise of *ordinary diligence* by the party making the mistake." *Id.* at 138–39 (citing *Grahn v. Gregory,* 800 P.2d 320, 327 (Utah App.1990), *cert. denied,* 843 P.2d 516 (Utah 1991)). The *Klas* court observed that

> [d]efendants had ample opportunity, if materially concerned about the value at which

---

4. The Maacks' brief states that the misrepresentations "are not limited" to the one concerning the builder's warranty, but do not describe any others. We have found none in the record on appeal, which record does not include the com-

plaint against Jarvik that was consolidated with the action against Hoagland and Resource Design. We therefore limit our inquiry to the stated misrepresentation regarding the builder's warranty.

the property would appraise, to have the property appraised during the two-week time period between the time of their initial inspection of the property and the time they executed the agreement.... Furthermore, we find it unreasonable, especially given Mark Van Wagoner's professional training and experience in real estate law, for defendants to have failed to obtain an independent appraisal prior to executing the Agreement, or to condition the obligation to purchase on the property appraising at a particular level, *if* they were truly concerned about the property's appraised value. *Because defendants failed to conduct a reasonable investigation of the subject property's market value prior to executing the Agreement, defendants' conduct did not rise to the level of ordinary diligence required to establish unilateral mistake.*

*Id.* at 141 (emphasis added). Although the *Klas* opinion focused on the issue of unilateral mistake, this court further determined that the defendants' counterclaim for fraud and misrepresentation was properly dismissed:

In light of our determination that defendants' conduct did not rise to the level of ordinary diligence, it follows that the trial court correctly dismissed defendants' counterclaim for fraud and misrepresentation. "Fraud as related to purchase of real estate may not be predicated on alleged false statements the truth of which could have been ascertained with reasonable diligence by the party asserting their falsity." *Sokolosky v. Tulsa Orthopaedic, Inc. Pension Trust,* 566 P.2d 429, 431 (Okla.1977) (quoting *Onstott v. Osborne,* 417 P.2d 291, 293 (Okla.1966)). *Defendants could have ascertained with reasonable diligence the truth or falsity of Carol Klas's alleged misrepresentations by requesting copies of the appraisals, or demanding to know the basis for her information, or by obtaining an independent appraisal of the subject property prior to executing the agreement.* Since the means of knowledge were avail-

able to defendants and since they failed to avail themselves of these means, they cannot now claim to have been deceived by the representations of the vendor. *See Sokolosky,* 566 P.2d at 431.

*Id.* at 141 n. 9 (emphasis added).

■ Although the Utah Supreme Court has not included due diligence as an element of negligent misrepresentation, it has required a somewhat analogous element of "reasonable reliance." *See Price–Orem,* 713 P.2d at 59 (negligent misrepresentation requires reasonable reliance by injured party).[5] Therefore, in order to successfully bring an action for negligent misrepresentation, the Maacks must demonstrate that they at least took reasonable steps to ascertain the truth of Kesselring's representation that there was a one-year builder's warranty, or, worded differently, that the Maacks' reliance on Kesselring's statement without some further inquiry was reasonable under the circumstances.

■ It is undisputed that the Maacks did not ask for details regarding the scope of the alleged builder's warranty, did not ask to review a copy of the warranty, and did not require that reference to the warranty be included in the Agreement. Additionally, the Maacks did not inquire as to the date of expiration of the warranty. Because the house was completed in approximately July 1987, the Maacks were on notice that it was entirely possible that the warranty had expired or was very close to expiration at the time they signed the Agreement. In addition, Mr. Maack, as an experienced attorney, was on notice that reliance was unreasonable by the Agreement's express provisions that the property was sold "as is," with no warranties other than those expressly stated, and that it superseded any prior oral or written agreements. For these reasons, we conclude as a matter of law that the Maacks did not reasonably rely on Kesselring's statement and did not exercise due diligence with respect to the existence of the alleged build-

5. *Schuhman v. Green River Motel,* 835 P.2d 992 (Utah App.1992), criticized the *Klas* opinion for requiring due diligence in a fraudulent misrepresentation claim, as the supreme court had required only reasonable reliance. Conceivably, reasonable reliance requires less care than due diligence. However, they both impose some standard of care on one claiming to be a victim of misrepresentation.

**578**

er's warranty. Accordingly, the negligent misrepresentation claim must fail.[6]

## 2. *Fraudulent Concealment*

■ Stated most favorably to the Maacks, the facts supporting their claims for failure to fully disclose and fraudulent concealment are as follows: Jarvik instructed Hoagland to substitute a cement-based stucco for the house; Hoagland thereupon told him that this type of stucco was not suitable for the cold temperatures found in Salt Lake City and was likely to crack;[7] and Jarvik did not inform the Maacks of these facts.

Fraudulent concealment is described in Restatement (Second) of Torts § 550, at 118 (1977) as follows:

One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering.

*Id.; see also Atherton Condominium Bd. v. Blume Dev.,* 115 Wash.2d 506, 799 P.2d 250, 261 (1990) (fraudulent concealment cause of action requires, inter alia, that "a careful, reasonable inspection on the part of the purchaser would not disclose the defect").

The facts alleged by the Maacks fail to support a claim for fraudulent concealment, as no evidence is offered to prove that Jarvik intentionally or actively concealed any defect in the home. *See* Restatement (Second) of Torts § 550 cmt. a, at 118 (1977); *see also Burns v. Cannondale Bicycle Co.,* 876 P.2d

415 (Utah App.1994) (failure of proof on an essential element of claim properly results in summary judgment). Indeed, Hoagland's deposition testimony was that Jarvik preferred for aesthetic reasons the substituted stucco, even though it had a greater chance of cracking. Thus, the Maacks' claim of fraudulent concealment also fails.

## 3. *Fraudulent Nondisclosure*

■ The Utah Supreme Court discussed the issue of fraudulent nondisclosure in *First Security Bank v. Banberry Development,* 786 P.2d 1326 (Utah 1990). The court held that this theory requires that the nondisclosed information must be material, known to the party failing to disclose, and there must be a legal duty to communicate. *Id.* at 1328. The question of whether a duty exists is answered "by reference to all the circumstances of the case and by comparing the facts not disclosed with the object and end in view by the contracting parties." *Id.* (quoting *Elder v. Clawson,* 14 Utah 2d 379, 382–83, 384 P.2d 802, 804–05 (1963)). The proponent of such a legal duty has the burden of persuasion and its existence presents a question of law. *Id.* at 1329.

■ The Maacks argue that because Jarvik disclosed to them that the stucco on parapets around the garage was defective and offered to fix it, he had a duty to disclose other defects in the stucco of which he was aware. The Maacks cite the following language that was included in the *Banberry* case, taken from the Restatement (Second) of Torts § 551(2)(b), at 119 (1977):

571 P.2d 769, 775–76 (1977), *overruled in part on other grounds by Owen v. Boydstun,* 102 Idaho 31, 624 P.2d 413, 418 & n. 2 (1981)). There is no such presumption with respect to assertions concerning the existence of a builder's warranty. Therefore, *Dugan* is inapposite.

**6.** The Maacks cite *Dugan v. Jones,* 615 P.2d 1239 (Utah 1980) to argue by analogy that an action for negligent misrepresentation is available under the facts of this case. In *Dugan,* the Utah Supreme Court held that a misrepresentation concerning the acreage of purchased property is actionable under the theory of negligent misrepresentation. However, *Dugan* expressly relied upon the common law rule that "a vendee of real property, in the absence of facts putting him on notice, *has no duty to investigate* to determine whether the vendor has misrepresented the area conveyed." *Id.* at 1247 (emphasis added). This is because "[a]n owner is presumed to know the boundaries of his own land, the quantity of his acreage, and the amount of water available." *Id.* at 1246 (citing *Sorenson v. Adams,* 98 Idaho 708,

**7.** The Maacks' brief also asserts that Jarvik had a wash applied to the house to cover up the cracked stucco. This assertion references only oral argument by Maacks' counsel at a hearing on the motion for summary judgment and we have not been able to find a basis for the assertion anywhere else in the record. We therefore disregard it.

One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

. . . .

matters known to him that he knows to be necessary to prevent his partial or unambiguous statement of the facts from being misleading.

*Id.; see also Banberry,* 786 P.2d at 1330–31.

■ Although this issue presents a close call, we hold that under these circumstances Jarvik had no legal duty to disclose his doubts, if any, about the integrity of the stucco. The *Banberry* court, quoting from W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* at 738–39 (5th ed. 1984), states in effect that the duty to disclose in a vendor-vendee transaction exists only where a defect is not discoverable by reasonable care. *Banberry,* 786 P.2d at 1331. As with the other claims against Jarvik, the Maacks could not reasonably assume that absent the specific enumeration of all possible defects in the home, none existed. The Agreement, while perhaps not barring the Maacks' claims in toto, by its clear terms is contrary to them and further highlights the unreasonable nature of the Maacks' actions in not obtaining an inspection,[8] or insisting on express rights in the Agreement. *See Horsch v. Terminix Int'l Co.,* 19 Kan.App.2d 134, 865 P.2d 1044, 1048 (1993) (party to contract has duty to disclose facts material to transaction and not within reasonable reach of other party if other party could not discover these facts by exercise of reasonable diligence). Under these circumstances, summary judgment for Jarvik was not erroneous.[9]

### Appeal from Order Granting Summary Judgment to Hoagland and Resource Design

The Maacks' First Amended Complaint alleges claims for negligence, strict liability, res ipsa loquitur, and negligent and/or intentional misrepresentation against Resource Design and Hoagland. On appeal from the trial court's grant of summary judgment to Resource Design and Hoagland, the Maacks raise six issues: (1) Does Utah recognize a negligence cause of action for purely economic loss? (2) Have the elements of the doctrine of res ipsa loquitur been established in this case? (3) Did the trial court improperly dismiss the Maacks' cause of action sounding in products liability? (4) Should Utah adopt an implied warranty of habitability for used residential property? (5) Did the trial court err by granting summary judgment on the claims for negligent and/or intentional misrepresentation? (6) Was summary judgment appropriate with respect to Resource Design's counterclaim? We address each of the Maacks' contentions in turn.

### 1. Recovery of Purely Economic Loss in Negligence

■ The Maacks argue that the trial court erred in determining as a matter of law that there can be no cause of action sounding in negligence for the recovery of purely economic damages. The "economic loss rule" is the majority position that one may not recover "economic" losses under a theory of non-

---

8. The Maacks concede twice in their opening brief that "[a]n inspection by a general contractor ... would have revealed the defects in the stucco and other parts of the residence." In their reply brief, the Maacks state that "in all likelihood" a general contractor would have been able to detect the defects in the stucco, "but that remains a factual issue in the case." However, the only evidence before this court is the evidence cited by the Maacks to substantiate their contention that "[a]n inspection by a general contractor ... would have revealed the defects in the stucco and other parts of the residence." Therefore, while the Maacks identify the ability of a contractor to detect the defects as a factual issue, they appear to have resolved it in their opening brief.

9. Jarvik requests attorney fees and costs due to the "frivolity" of the Maacks' appeal. Attorney fees may be awarded on appeal if the appeal is frivolous. Utah R.App.P. 33. A frivolous appeal is "one that is not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law." Utah R.App.P. 33(b). While the Maacks were not successful on appeal, their appeal was apparently motivated by a good faith attempt to extend, modify, or reverse existing law and was therefore not frivolous. Accordingly, an award of attorney fees is not appropriate in this case.

intentional tort. *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866–75, 106 S.Ct. 2295, 2300–04, 90 L.Ed.2d 865 (1986); *accord Lempke v. Dagenais*, 130 N.H. 782, 547 A.2d 290, 296 (1988) ("It is clear that the majority of courts do not allow economic loss recovery in tort, but that economic loss is recoverable in contract."). Economic loss is defined as:

> " '[D]amages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits— without any claim of personal injury or damage to other property ... as well as "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." ' "

*2314 Lincoln Park W. Condominium v. Mann*, 136 Ill.2d 302, 144 Ill.Dec. 227, 229, 555 N.E.2d 346, 348 (1990) (citations omitted).

■■■ The economic loss rule arises from intrinsic differences between tort and contract law. Contract law protects expectancy interests created through agreement between the parties, while tort law protects individuals and their property from physical harm by imposing a duty to exercise reasonable care. *See generally East River*, 476 U.S. at 866–75, 106 S.Ct. at 2300–04; *Redarowicz v. Ohlendorf*, 92 Ill.2d 171, 65 Ill.Dec. 411, 413–14, 441 N.E.2d 324, 326–27 (1982). As the Missouri Supreme Court noted in *Crowder v. Vandendeale*, 564 S.W.2d 879 (Mo.1978) (en banc),

> A duty to use ordinary care and skill is not imposed in the abstract. It results from a conclusion that an interest entitled to protection will be damaged if such care is not exercised. Traditionally, interests which

have been deemed entitled to protection in negligence have been related to *safety* or freedom from physical harm. Thus, where personal injury is threatened, a duty in negligence has been readily found. Property interests also have generally been found to merit protection from physical harm. However, where mere deterioration or loss of bargain is claimed, the concern is with a failure to meet some standard of *quality*. This standard of quality must be defined by reference to that which the parties have agreed upon.

*Id.* at 882.

The parties in the case at hand dispute whether Utah continues to adhere to the "economic loss rule." The Maacks contend that the case of *W.R.H. Inc. v. Economy Builders Supply*, 633 P.2d 42 (Utah 1981), demonstrates that Utah has rejected the rule, while appellees claim that *W.R.H.* has only very limited application.[10]

In *W.R.H.*, the plaintiff, W. Reid Horne, purchased large quantities of plywood siding from Economy Builders. After installing the siding on his construction projects, Horne discovered that some of the siding was delaminating. Horne brought an action against the retailers and the manufacturers of the siding, claiming breach of warranty and negligence in the manufacture and sale of the siding. The trial court granted summary judgment for the defendants in part because the claims of negligent manufacture failed to state a cause of action.

■■■ On appeal, the supreme court held that the "economic loss rule" was not applicable

> *in situations such as the present* where the alleged *defective manufacture* results in the deterioration of the product. Where

---

10. The Maacks also claim that *Good v. Christensen*, 527 P.2d 223 (Utah 1974) permits an injured party to recover, in a negligence action, for defects in construction—a purely economic loss. They quote language in *Good* that "an owner does sustain damage as soon as an improper construction is made, and he can bring an action against the contractor for breach of contract or for negligent construction." *Id.* at 224. This observation was pure dicta and appears to have been rejected in *W.R.H. Inc. v. Economy Builders Supply*, 633 P.2d 42 (Utah 1981). The issue in *Good* involved the interpretation of a statute of

limitations governing recovery for damages "for any injury to property, real or personal, or for any injury to the person, or for bodily injury or wrongful death, arising out of the *defective and unsafe condition* of an improvement to real property." *Good*, 527 P.2d at 224 (emphasis added) (quoting Utah Code Ann. § 78–12–25.5 (1967)). This statute does not authorize recovery of damages in negligence due to mere deterioration of a structure and it expressly applies only to damages arising out of "unsafe conditions." Therefore, the reasoning in *Good* is not applicable to the instant case.

some damage to the product results from the negligence of the manufacturer, the consumer's damages are not "purely economic," or economic loss alone, and actions to recover all damages resulting from the product's deterioration should be allowed under a negligence theory.

*Id.* at 44 (emphasis added). Thus, *W.R.H.* arguably stands for the proposition that economic losses are recoverable in Utah, but only in negligent manufacture cases. As the present case involves alleged negligent construction rather than negligent manufacture, *W.R.H.* is not controlling.[11] Consequently, the Maacks' claims for purely economic damages based upon allegations of negligent design and construction must fail.[12]

### 2. Strict Liability

The Maacks alleged that the exterior components of the residence—the stucco, membranes, and adhesives—were either inherently defective, rendered defective due to improper preparation and installation, or patently defective in that they were inappropriate for the use to which they were put. As a result of these "defective" components, water leaked into the house damaging a cotton sofa, a record collection, and some clothing. In addition, there was apparently some unspecified amount of damage to the walls and ceilings, and some of the carpeting had to be cleaned. The Maacks contend they are entitled to relief for the water damage under a theory of strict products liability. This claim was rejected by the trial court on the basis that defendants "were not sellers or manufacturers of a product."

In *Ernest W. Hahn, Inc. v. Armco Steel,* 601 P.2d 152 (Utah 1979), the Utah Supreme Court adopted the doctrine of strict liability as set forth in the Restatement (Second) of Torts § 402A, at 347–48 (1965). *Id.* at 158. Section 402A provides in relevant part:

(1) One who *sells* any *product* in a *defective condition unreasonably dangerous* to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if:

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

*Id.* at 156 (emphasis added).

■ *Hahn* suggests at least two reasons the Maacks' claim of strict products liability fails. First, we find no reason to disturb the trial court's conclusion in its Rule 52 Statement that Resource Design and Hoagland were not "sellers" or manufacturers of the component parts of the exterior of the house. The Maacks claim, nonetheless, that Resource Design and Hoagland were "sellers" of the component parts because the contract between Jarvik and Resource Design specified that Resource Design would be paid on a "cost of work plus fee" basis. However, this inclusion of the cost of materials seems to have been solely for the purpose of calculating a fee for the work done. The evidence is undisputed that Resource Design and Hoagland were construction contractors who simply utilized these component parts when constructing the residence—they were not in the business of selling stucco, adhesives, or membranes on a wholesale or retail basis. *See*

---

**11.** We note that *W.R.H.* is a plurality opinion as only Justice Wilkins concurred in the lead opinion of Justice Maughan, while Justices Stewart and Crockett concurred in the result only. The opinion, therefore, does not represent even a majority position of the court as then constituted. Furthermore, Justice Hall's dissent in *W.R.H.* persuasively underscores the general rule that even in negligent manufacture cases no economic losses are recoverable unless an accident results from the negligent manufacture. And in defining "accident," Justice Hall noted that it does not include "mere marked deterioration, or even a complete ruin brought about by internal defects. Mere deterioration is therefore a 'purely economic loss' under commonly accepted notions of product liability." *W.R.H.,* 633 P.2d at 47.

**12.** In light of our holding that the Maacks cannot recover purely economic damages in an action sounding in negligence, we need not reach the Maacks' claim that negligence was established in this case by the doctrine of res ipsa loquitur. *See Dalley v. Utah Valley Regional Medical Ctr.,* 791 P.2d 193, 196 (Utah 1990) (res ipsa loquitur is evidentiary doctrine "created to help plaintiff establish a prima facie case of negligence using circumstantial evidence").

Restatement of Torts 2d § 402A cmt. f, at 350 (1965).

▮▮▮▮ The Maacks' claim also fails because the doctrine of strict products liability requires that the product in question be "unreasonably dangerous." *Conger v. Tel Tech, Inc.*, 798 P.2d 279, 281 (Utah App.1990) ("In order for the theory of strict liability to apply, Section 402A requires that there be a sale of a product which creates an unreasonably dangerous situation for the user."). The Maacks contend this element is met because the "entire exterior of this home was dilapidated and crumbling."

The term "unreasonably dangerous" has been defined by statute as follows:

[U]nreasonably dangerous means that the product was dangerous to an extent beyond which would be contemplated by the ordinary and prudent buyer, consumer or user of that product in that community considering the product's characteristics, propensities, risks, dangers and uses together with any actual knowledge, training, or experience possessed by that particular buyer, user or consumer.

Utah Code Ann. § 78–15–6(2) (1992). It would render meaningless the term "dangerous" if this court were to find that defects in the stucco, adhesives, or membranes used to finish the exterior of the Maacks' home pose an unreasonable threat of harm to people or their property. This is particularly true in light of the damages actually sustained in this case. Therefore, the trial court did not err in determining that the elements of strict products liability were not established in this case.

### 3. *Implied Warranty of Habitability*

The Maacks concede that Utah does not currently recognize an implied warranty of habitability relating to the construction of residential property and instead continues to adhere to the traditional rule of caveat emptor. However, they invite this court to join those jurisdictions that have adopted a variant of an implied warranty of habitability and remand the matter to the trial court for a determination of whether this warranty is applicable in their case. *See, e.g., Nastri v. Wood Bros. Homes, Inc.*, 142 Ariz. 439, 690 P.2d 158, 161 (App.1984); *Redarowicz v. Ohlendorf*, 92 Ill.2d 171, 65 Ill.Dec. 411, 415–18, 441 N.E.2d 324, 328–31 (1982); *Crowder v. Vandendeale*, 564 S.W.2d 879, 882 (Mo.1978); *Radaker v. Scott*, 109 Nev. 653, 855 P.2d 1037, 1042 (1993); *Lempke v. Dagenais*, 130 N.H. 782, 547 A.2d 290, 297 (1988); *Atherton Condominium Bd. v. Blume Dev.*, 115 Wash.2d 506, 799 P.2d 250, 257–59 (1990); *Moxley v. Laramie Builders, Inc.*, 600 P.2d 733, 735 (Wyo.1979).

In *Wade v. Jobe*, 818 P.2d 1006 (Utah 1991), the Utah Supreme Court adopted an implied warranty of habitability for residential leases. *Id.* at 1010. The supreme court reviewed the history of the rule of caveat emptor in the context of residential leases and determined that contemporary circumstances of lessees and lessors were substantially different than in the past. The court found that "[m]odern tenants generally lack the necessary skills or means to inspect the property effectively or to make repairs." *Id.* Further,

the rule of caveat emptor assumes an equal bargaining position between the landlord and tenant. Modern tenants, like consumers of goods, however, frequently have no choice but to rely on the landlord to provide a habitable dwelling. . . . Where they exist, housing shortages, standardized leases, and racial and class discrimination place today's tenants, as consumers of housing, in a poor position to bargain effectively for express warranties and covenants requiring landlords to lease and maintain safe and sanitary housing.

*Id.* (citations omitted).

The Maacks assert that "[t]he policies underlying the implied warranty of habitability in residential leases applies [sic] with equal, if not greater force, to the warranty of habitability in the construction of residential homes." This is because the purchase of a home is often the single largest investment an individual or family will make, and "[m]ost purchasers simply do not have the knowledge or expertise necessary to discover latent defects."

▮▮▮▮ The main policy reasons behind extending an implied warranty of habitability

to residential leases are the unequal bargaining position of the parties and the prospective tenant's limited ability to inspect and repair the property. These policy reasons are not present to the same degree in the purchase of residential property. The purchaser has the right to inspect the house before purchase as thoroughly as that individual desires, and to condition purchase of the house upon a satisfactory inspection report. Further, if there are particular concerns about a home, the parties can contract for an express written warranty from the seller. Finally, if there are material latent defects of which the seller was aware, the buyer may have a cause of action in fraud. Therefore, the circumstances presented to the purchaser of a residence are not closely analogous to those of a relatively powerless lessee and this court is accordingly reluctant to extend the reasoning of *Jobe* to encompass the instant case. In addition, while the Utah Supreme Court rejected the caveat emptor rule in the context of residential leases, the rule apparently continues to govern the purchase of used residential property. *Utah State Medical Ass'n v. Utah State Employees Credit Union*, 655 P.2d 643, 645 (Utah 1982) (noting that "[t]he doctrine [of caveat emptor] has eroded in the sale of new residential housing. However, the doctrine appears to prevail in the sale of used property whether homes or commercial.").

We are also concerned that there is insufficient information before this court to thoroughly address the issue of the appropriate allocation of risk between builders of residences and individuals who purchase these residences. As this court observed in *P.H. Investment v. Oliver*, 778 P.2d 11 (Utah App. 1989), *rev'd on other grounds*, 818 P.2d 1018 (Utah 1991),

> Court procedures and our constriction to the record made in a specific case leave us with only limited means of gathering the broad information necessary for informed legislation. The judiciary is also limited by the happenstances that bring cases into appellate litigation, making it difficult to formulate a coherent, comprehensive approach to a problem, since the means to do so are only haphazardly available.

*Id.* at 13. In addition, the particular facts of this case further constrain our consideration of the implied warranty of habitability issue. As noted earlier in this opinion, the Maacks have conceded that a reasonable inspection of the home at the time of purchase would have revealed all of the alleged defects. *See Moxley*, 600 P.2d at 736 ("[I]mplied warranty [of habitability] is limited to latent defects which are not discoverable by the subsequent purchasers by reasonable inspection and which become manifest only after the purchase."). The Maacks' failure to reasonably inspect the home further bolsters our conclusion that the trial court did not err in denying the Maacks relief on a theory of implied warranty of habitability.

4. *Negligent and/or Intentional Misrepresentation*

The Maacks claim that Hoagland misrepresented a material fact by both stating that he would perform repair work on the house and suggesting that it would be free of charge. It is undisputed that Resource Design attempted repairs on the house for nearly a year and then refused to do any further work on the residence. After the Maacks filed suit against Hoagland and Resource Design, Resource Design counterclaimed for compensation for the repair work. The trial court granted summary judgment to Resource Design and Hoagland, concluding that the Maacks failed to establish the elements of a negligent and/or intentional misrepresentation claim.

As discussed earlier in this opinion, the Utah Supreme Court has described the tort of negligent misrepresentation as follows:

> [T]he tort of negligent misrepresentation, which provides that a party injured by reasonable reliance upon a second party's careless or negligent misrepresentation of a material fact may recover damages resulting from that injury when the second party had a pecuniary interest in the transaction, was in a superior position to know the material facts, and should have reasonably foreseen that the injured party was likely to rely upon the fact.

*Price–Orem Inv. Co. v. Rollins, Brown & Gunnell*, 713 P.2d 55, 59 (Utah 1988). The

elements of an action based on fraudulent misrepresentation are:

> (1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage.

*Dugan v. Jones*, 615 P.2d 1239, 1246 (Utah 1980). The Maacks claim that in light of the counterclaim filed by Resource Design and Hoagland, Hoagland's statements that he would "stand by his work" and "make it right" were negligent or fraudulent misrepresentations of material fact that they reasonably relied upon to their detriment.

The Maacks correctly point out that "[t]o be liable for fraud, a defendant's misrepresentation must be of a presently existing fact.... [I]t is settled that a misrepresentation of a present promissory intention is a misrepresentation of a presently existing fact." *Galloway v. AFCO Dev. Corp.*, 777 P.2d 506, 508 (Utah App.1989) (footnote omitted); *see also Andalex Resources v. Myers*, 871 P.2d 1041, 1047–48 (Utah App.1994). The Maacks did not present any evidence or sufficient allegations that Hoagland misrepresented a present promissory intention—in other words, that Hoagland did not intend to keep his promise at the time he made it. In fact, Hoagland's attempts to rectify the problems over the course of a year suggest that his promise was made in good faith and was not actionable negligence or deceit. " '[I]f the promise is made in good faith when the contract is entered into, there is no fraud though the promissor subsequently changes his mind and fails or refuses to perform.' ... We think this same rule should obtain when the

promissor's expression of intention to perform is made in good faith even though [it] may have been negligent...." *Cerritos Trucking Co. v. Utah Venture No. 1*, 645 P.2d 608, 612 (Utah 1982) (citations omitted). Therefore, the Maacks' claim of negligent and/or intentional misrepresentation was properly dismissed by the trial court.[13]

## CONCLUSION

The Maacks have not demonstrated on appeal that the trial court erred in determining that they did not establish the elements of the various theories propounded. Accordingly, we affirm the trial court's orders granting summary judgment to Resource Design and Hoagland and to Jarvik.

BENCH, J., and GARFF, Senior Judge, concur.

---

**13.** After the trial court granted its motion for summary judgment, Resource Design voluntarily dismissed its counterclaim seeking payment for the repair work performed for the Maacks. On appeal, the Maacks ask that we rule that the counterclaim should have been dismissed on summary judgment by the trial court because there was no oral, written, or implied contract regarding this work between the parties. Because of our disposition of the other issues on appeal, we do not address this contention.