ALBERT EUGENE GUNTERMAN, Plaintiff-Appellant, v. CARLEEN
RICE, Defendant-Appellee.

Fourth District   No. 4—87—0149

Opinion filed September 17, 1987.

Gail Gisy, of Jerseyville, for appellant.

Hoagland, Fitzgerald, Smith & Pranaitis, of Alton (William H.
Hoagland, of counsel), for appellee.

JUSTICE LUND delivered the opinion of the court:

On January 28, 1987, the circuit court of Jersey County granted
the motion for summary judgment filed by Carleen Rice, defendant, in
the personal injury lawsuit filed by Albert Gunterman, plaintiff. Plain-
tiff appeals. We affirm.

The evidence shows plaintiff had been dating defendant for sev-
eral years. Defendant went to Florida and asked plaintiff to watch
her house. On February 13, 1984, some time after 10 p.m., plaintiff
became hungry and decided to cook some frozen fish kept in the deep

freeze. He placed a large pot, half full of cooking grease, on the largest burner on the stove and turned it to the highest setting. The stove was an electric stove, and though plaintiff had been in the house many times, he had never operated it before.

Plaintiff then proceeded to get the fish from the freezer in the basement. On the way, he decided to go to the bathroom since he was suffering from diarrhea. Once there, he became engrossed in "doing his job" and forgot about the grease. He admitted he was there longer than usual and may have been there five minutes.

He heard the smoke detector go off and went immediately to the kitchen, finding the grease on fire. He started throwing water on the fire, which caused the grease to splash on him, burning him. Eventually, he put the fire out.

Plaintiff filed a personal injury action against defendant alleging she had a duty to warn him that the stove heated up quickly. Defendant filed a motion for summary judgment which the court granted on January 28, 1987. Plaintiff contends the decision is incorrect.

■ Plaintiff's complaint alleges that defendant knew her stove was abnormal because it heated extremely fast, and she had a duty to warn plaintiff, which duty she breached. The existence of a duty, that is, a legal obligation to conform one's conduct to a certain standard for the benefit or protection of another, is a matter of law to be determined by the court. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 555, 328 N.E.2d 538, 540.) In determining whether the law imposes a duty, foreseeability of possible harm alone is not the test, but the likelihood of injury from the existence of a particular condition, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden upon the defendant, as well as other public policy and social considerations, must also be taken into account. *Barnes v. Washington* (1973), 56 Ill. 2d 22, 29, 305 N.E.2d 535, 539; *Illinois Housing Development Authority v. Sjostrom & Sons, Inc.* (1982), 105 Ill. App. 3d 247, 261-62, 433 N.E.2d 1350, 1361.

In the current case, there is no evidence, nor is it even alleged, that the stove was defective. The only evidence concerning its functioning was testimony by the defendant that the stove heated fast. The stove was one year old, and defendant never had to call a repairman for it. We are not prepared to hold that a homeowner has a duty to warn another adult that an electric stove heats "fast" when it is turned to the highest setting. Even if we were to assume that foreseeability of a possible harm existed from this "fast" heating (a dubious assumption, to be sure), we would find that the likelihood of injury such as occurred here is so minimal that a duty would not be

created. We are not prepared to require that every property owner with a stove which heats "fast" must warn all users of that fact.

■ Further, Illinois follows the principles found in sections 343 and 343A of the Restatement (Second) of Torts. (Restatement (Second) of Torts secs. 343, 343A (1965); *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 468-69, 343 N.E.2d 465, 472; *Sepesy v. Archer Daniels Midland Co.* (1981), 97 Ill. App. 3d 868, 871, 423 N.E.2d 942, 944-45.) Section 343A limits the liability of a landowner to invitees. It provides in part:

> "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them." (Restatement (Second) of Torts sec. 343A (1965).)

In *Sepesy v. Archer Daniels Midland Co.* (1981), 97 Ill. App. 3d 868, 873, 423 N.E.2d 942, 946, we reaffirmed the rule:

> " 'Generally, there is no obligation to protect the invitee against dangers which are known to him, or which are so obvious and apparent to him that he may reasonably be expected to discover them. [Citations.] A possessor of land is not an insurer for all accidents occurring upon his premises.' "

Plaintiff's complaint asks compensation for injuries resulting from an obvious danger.

■ In *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465, the supreme court found it was common knowledge that electricity and lines carrying it are dangerous. Similarly, we find that it is common knowledge that operating a stove on a high setting with a pot of grease heating on the largest burner unattended is dangerous. Therefore, we find no duty exists.

We cannot help but note that cases of this nature are in good measure responsible for the backlog in our courts and the delay in resolving legitimate causes of action. Our society, as a whole, has developed an attitude that any injury mandates compensation regardless of personal responsibility. There are still situations where people are injured either truly by accident or through their own conduct. Here it is clear plaintiff's injuries are entirely a result of his own conduct. We do not mean to minimize the seriousness of his injuries, but it is not appropriate that he should attempt to place the burden of his unfortunate situation on defendant by asserting dubious legal theories in attempting to hit the jackpot. The sooner society realizes that it is not every injury that deserves legal redress, the sooner sanity will return to court caseloads, and the long delays between incident and resolution will decrease.

For the reasons stated above, we affirm the decision of the circuit court of Jersey County.

Affirmed.

SPITZ, P.J., and GREEN, J., concur.