SCOTT SHULTS, Plaintiff-Appellant, v. GRIFFIN-RAHN INSURANCE
AGENCY, INC., *et al.*, Defendants-Appellees.

Third District    No. 3—89—0220

Opinion filed January 5, 1990.—Rehearing denied February 20, 1990.

454

Nile J. Williamson, of Peoria, for appellant.

Daniel L. Johns and Thomas W. O'Neal, both of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:

On March 21, 1989, the circuit court of Tazewell County granted the motion of defendants Griffin-Rahn Insurance Agency and Betty Rahn and dismissed with prejudice the complaint filed against them by plaintiff Scott Shults. Plaintiff appeals.

The issues are whether defendant, as an insurance broker, has a duty to advise plaintiff of the appropriate amount of uninsured motorist coverage; whether the complaint sufficiently alleges the presence of a contract sufficient to support an allegation that an insurance broker breached the contract by failing to recommend higher uninsured motorist coverage; and whether an insurance broker breaches his duty to an insured by failing to recommend higher uninsured motorist coverage. We affirm.

On October 12, 1986, plaintiff was involved in an automobile accident with an uninsured motorist while driving his 1974 Monte Carlo. The other driver was killed. Plaintiff received numerous injuries, including a broken hip. A passenger in plaintiff's car was also injured.

At the time of the accident, plaintiff's parents had insurance procured for them by defendants some time prior to October 25, 1985. There is no indication how long this policy has been in effect. Plaintiff was a member of the household, and the car he was driving was listed along with two others on the policy. The policy had a liability coverage

of $500,000 per accident and an uninsured motorist (UM) coverage of $30,000 per accident. This latter amount was, then, the statutorily required minimum UM coverage. See Ill. Rev. Stat. 1985, ch. 73, par. 755(a)(1); ch. 95½, par. 7—203 (requiring minimum $15,000 (one)/ $30,000 (two or more)) (eff. Jan. 1, 1984).

On September 23, 1987, plaintiff filed his initial complaint. A third-amended count was filed on February 3, 1989. Since count I was settled with another defendant, only counts II through VII are involved in the current controversy.

Counts II and III sounded in negligence. It is alleged defendants had a duty to advise plaintiff and his parents "of such facts and information so as to enable said persons to purchase policy (policies) of insurance in such maximum amounts and coverages as were reasonable for the person(s) to be covered by said insurance." It is then asserted defendants breached this duty by failing to inform insured that the maximum possible UM coverage is the same as the liability coverage; by procuring said policy without confirming that the insurance company had notified insureds of this possible maximum coverage; and by procuring a policy with coverage which was not reasonable for the coverage sought.

Counts IV and V were based ôn contract theory. It was alleged that defendants entered into an oral agreement with plaintiff's parents where they agreed to purchase, and defendants agreed to procure, an automobile insurance policy in such maximum amounts of coverage for liability and UM as was reasonable; and plaintiff, as a member of his parents' household, was an intended third-party beneficiary. It was alleged this agreement was breached by the failure of the procured policy to contain the same UM limits as those for liability coverage.

Finally, counts VI and VII allege that defendants were fiduciaries to plaintiff arising out of the transaction with plaintiff's parents "in view of the fact that said SCOTT SHULTS relied upon the expertise of Defendants," and each of them received a commission in procuring the policy. It was alleged this fiduciary duty was breached by failing to cause the UM limits to be the same as the liability limits.

Defendants filed a motion to dismiss the complaint asserting numerous reasons. On March 21, 1989, the court entered an order granting this motion and dismissing counts II through VII with prejudice. Plaintiff now appeals. We affirm.

Illinois law places a particular burden on an insurance broker to exercise competence and skill when he renders the service of procuring insurance. (*Economy Fire & Casualty Co. v. Bassett* (1988),

170 Ill. App. 3d 765, 771-72, 525 N.E.2d 539, 543.) A broker is bound to exercise reasonable skill and diligence in the transaction of the business entrusted to him, and will be responsible to his principal for any loss resulting from his failure to do so. (*Pittway Corp. v. American Motorists Insurance Co.* (1977), 56 Ill. App. 3d 338, 347, 370 N.E.2d 1271, 1277.) In this regard, the broker's primary function as it relates to the insured is to faithfully negotiate and procure an insurance policy according to the wishes and requirements of his client. (*Bassett*, 170 Ill. App. 3d at 772, 525 N.E.2d at 543; *Pittway*, 56 Ill. App. 3d at 347, 370 N.E.2d at 1277.) The relationship between an insured and his broker, acting as the insured's agent, is a fiduciary one even though the broker may be compensated by a third party. (*Black v. Illinois Fair Plan Association* (1980), 87 Ill. App. 3d 1106, 1110, 409 N.E.2d 549, 552.) A broker is not liable if he acts in good faith and with reasonable care, skill, and diligence to place the insurance in compliance with his principal's instructions. *Omni Overseas Freighting Co. v. Cardell Insurance Agency* (1979), 78 Ill. App. 3d 639, 643, 397 N.E.2d 112, 115.

The conventional claim against a broker has been for the broker's failure to procure the insurance as directed. In this case, plaintiff acknowledges the insurance was procured. However, he is concerned with the disparity in the policy between the liability coverage ($500,000) and the UM coverage ($30,000). He wishes to place a duty on a broker to advise his clients of disparities between liability and UM coverages and of the possibility of having UM coverage in excess of the statutory minimum. Heretofore, no such duty has been recognized.

■ The existence of a duty, that is, a legal obligation to conform one's conduct to a certain standard for the benefit or protection of another, is a matter of law to be determined by the court. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 555, 328 N.E.2d 538, 540; *Gunterman v. Rice* (1987), 160 Ill. App. 3d 545, 546, 514 N.E.2d 198, 199.) The question of its existence is ultimately a question of public policy. *Sostock v. Reiss* (1980), 92 Ill. App. 3d 200, 206, 415 N.E. 2d 1094, 1098.

■ Our legislature has already recognized the important public policy in insureds being covered against uninsured motorists with enactment of section 143a of the Illinois Insurance Code, which mandates that every insurance policy provide a minimum UM coverage. (Ill. Rev. Stat. 1985, ch. 73, par. 755a.) Further, in section 143a—2(1) (Ill. Rev. Stat. 1985, ch. 73, par. 755a—2(1)), the legislature has acknowledged the need for insureds to be informed of higher possible

UM coverage. This section requires that the insurance company notify the insured upon issuance of a policy that the insured may purchase UM coverage in an amount up to the limits of the liability coverage. However, it also provides that if the insured does not avail himself of this opportunity after being initially offered the coverage, the insurance company need not make this offer on subsequent renewals. (See Ill. Rev. Stat. 1985, ch. 73, par. 755a—2(2).) If an insurance company fails to comply with section 143a—2 by not making this additional coverage conspicuously known to the insured, the policy of insurance will be reformed to include the higher coverage. See *Fuoss v. Auto Owners (Mutual) Insurance Co.* (1987), 118 Ill. 2d 430, 516 N.E.2d 268.

■ In view of these legislative enactments, we fail to see what purpose would be served by requiring brokers to duplicate the insurance companies' obligation to advise clients of possible higher UM coverage. We note, in the present case, the original policy was issued prior to 1985 and the complaint contains no allegations that the insureds were not advised of the possible higher coverage by the company. Once an insured has been informed of this possibility and decided against accepting it, we see little public policy in requiring the brokers to readvise the client of the missed opportunity. Accordingly, we hold an insurance broker has no such duty to advise clients of possible increased UM coverage and failure to do so does not breach the fiduciary relationship or support a claim for negligence.

Plaintiff also maintains the court erred in dismissing his breach of contract claims. Plaintiff's complaint alleges that a contract existed between plaintiff's parents and defendant in which the parents agreed to purchase the insurance policy defendants procured and defendants agreed "to procure an automobile policy in such maximum amounts of coverage for liability and uninsured/underinsured motorist as was reasonable." The complaint further alleged that plaintiff was an intended third-party beneficiary to the contract and defendants' breach by failing to procure a policy which contained the same limits for UM coverage as that for liability coverage.

The parties spend much of their time and effort arguing whether plaintiff is an intended third-party beneficiary of this contract which gives him standing to sue on the contract. However, we need not resolve this question for we find the alleged contract was too vague to be enforced.

■ It is basic contract law that in order for a contract to be binding and enforceable, its terms must be definite and certain. (*Panko v. Advanced Appliance Service* (1977), 55 Ill. App. 3d 301, 304, 371 N.E.2d 3, 5; *Kraftco Corp. v. Koblus* (1971), 1 Ill. App. 3d 635, 638,

274 N.E.2d 153, 155.) They must also be free from ambiguity and doubt. (*Morey v. Hoffman* (1957), 12 Ill. 2d 125, 130, 145 N.E.2d 644, 647.) If the material terms are not ascertainable, no enforceable contract is created. *A.S. & W. Club v. Drobnick* (1962), 26 Ill. 2d 521, 525, 187 N.E.2d 247, 249.

In *Nowell v. Dawn-Leavitt Agency, Inc.* (1980), 127 Ariz. 48, 617 P.2d 1164, the court was faced with many of the same arguments presented here. There the court found an alleged contract where the agent was to obtain "the best policy" was unenforceable as being vague. (*Nowell*, 127 Ariz. at 52, 617 P.2d at 1168.) The court noted the word "best" is not susceptible to precise translation in this context, and held there was no meeting of the minds.

■■ Similarly, we find in this case an agreement to procure reasonable amounts of coverage is unenforceable. In the context of insurance coverage, a "reasonable amount" is an ambiguous phrase not subject to any definite or certain interpretation. Plaintiff wishes this court to supply this missing term by implying an obligation on insurance brokers to ensure liability coverage amounts and UM coverage amounts are equal. However, where certainty is lacking in the essential terms of the contract, the court will not supply the missing essential terms. (*Panko*, 55 Ill. App. 3d at 304, 371 N.E.2d at 5; *O'Neil & Santa Claus, Ltd. v. Xtra Value Imports, Inc.* (1977), 51 Ill. App. 3d 11, 14, 365 N.E.2d 316, 318.) Accordingly, since the material terms are unascertainable, the court's decision to dismiss the contract counts is proper.

For the above-mentioned reasons, the order of the Tazewell County court dismissing plaintiff's complaint is affirmed.

Affirmed.

KNECHT, P.J., and SPITZ, J., concur.