NATALIA KANTER *et al.*, Plaintiffs-Appellants, v. LOUIS DEITELBAUM *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—94—0836

Opinion filed April 7, 1995.

_____

Friedman & Holman, of Chicago, for appellants.

Tribler & Orpett, P.C., of Chicago (Philip R. King and David M. Menditto, of counsel), for appellees.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

In January 1991, plaintiffs Natalia Kanter and Felix Tsipris met with defendant Louis Deitelbaum to inquire about their obtaining health insurance coverage for themselves and their two minor children. Pursuant to his request, plaintiffs supplied Deitelbaum with certain factual and biographical information regarding themselves. Thereafter, Deitelbaum informed plaintiffs that he would obtain health insurance coverage for them. Based on the information he received from plaintiffs, Deitelbaum believed that said coverage would cover plaintiffs' health insurance needs. Deitelbaum then received from plaintiffs a sum of money pursuant to his request for the health insurance coverage he was to obtain for them.

In February 1991, Deitelbaum informed plaintiffs that he had obtained health insurance coverage for them through an insurance company named American Medical Security (AMS).

In March 1991, plaintiffs requested proof from Deitelbaum that they in fact did have insurance with AMS. Defendant provided plaintiffs with insurance identification cards which contained their respective names and addresses on the front of the cards.

In August 1991, Natalia received certain hospital and medical services. While Natalia was in the hospital, plaintiffs informed Deitelbaum of her medical treatment. In September 1991, Deitelbaum

requested and received from plaintiffs an additional sum of money, which he claimed was to cover additional costs of plaintiffs' health insurance coverage with AMS. Thereafter, plaintiffs properly submitted the medical bills incurred by Natalia to AMS. AMS, however, denied coverage on the grounds that there did not exist health insurance contracts between plaintiffs and AMS.

In March 1992, Deitelbaum purportedly obtained health insurance coverage for plaintiffs through Atlantic Healthcare Benefits Trust (AHBT). Plaintiffs received from Deitelbaum a copy of a health insurance plan and insurance identification cards, naming AHBT as the insurance carrier. Plaintiffs paid quarterly health insurance premiums directly to AHBT through October 1992. During the period of May through October 1992, plaintiffs and their minor children were in need of various medical treatment. On each occasion, plaintiffs duly submitted their medical bills to AHBT for payment, but AHBT denied coverage. Plaintiffs later discovered that AHBT did not have the required certificate of authority to operate an insurance business in Illinois.

On October 15, 1992, plaintiffs filed a *pro se* complaint in the circuit court of Cook County, alleging that defendants failed to obtain health insurance for plaintiffs, provided false information to them and wrongfully accepted monetary payment from plaintiffs. Plaintiffs subsequently retained counsel.

On November 23, 1993, the trial court entered an order allowing for the substitution of plaintiffs' counsel and the filing of a first-amended complaint. On December 7, 1993, plaintiffs filed their five-count amended complaint, wherein they alleged that Deitelbaum violated the Illinois Insurance Code (215 ILCS 5/1 *et seq.* (West 1992)) by (1) negligently procuring health insurance for them from an insurance company which is unauthorized to operate an insurance business in Illinois; (2) negligently failing to procure insurance coverage; (3) breaching their contract to procure insurance coverage; (4) violating the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1992)); and (5) making numerous fraudulent statements and representations to them regarding their health insurance coverage.

On January 5, 1994, Deitelbaum filed a motion to dismiss plaintiffs' first-amended complaint, arguing that counts I and II were barred by the *Moorman* doctrine (see *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443), that count III contained erroneous allegations of contractual duties, that count IV failed to state a claim under the Consumer Fraud Act, and that count V failed to state a claim for fraud. On February 23, 1994, the

trial court granted Deitelbaum's motion to dismiss counts I and II of plaintiffs' first-amended complaint with prejudice and counts III and V without prejudice. This appeal pertains only to the trial court's dismissal as to counts I and II.

On appeal, plaintiffs contend that the *Moorman* doctrine does not apply to professional negligence or insurance broker liability cases such as the present one and therefore does not bar recovery of their economic losses under a tort theory. Alternatively, plaintiffs contend that if the *Moorman* doctrine does apply on these facts, this case falls within the exceptions to the doctrine, thereby entitling them to recover their economic losses.

■ In *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443, the supreme court ruled that purely economic losses cannot be recovered under a negligence theory. (*Jerry Clark Equipment, Inc. v. Hibbits* (1993), 245 Ill. App. 3d 230, 612 N.E.2d 858.) Recognizing two exceptions to the general rule, however, the *Moorman* court held that economic losses are recoverable "where one intentionally makes false representations [citation], and where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations." *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d at 88-89, 435 N.E.2d at 452; see also *Jerry Clark Equipment, Inc. v. Hibbits*, 245 Ill. App. 3d 230, 612 N.E.2d 858.

At issue in the present case is whether the economic loss doctrine bars an insured's recovery in tort for an insurance broker's negligence.

■ In Illinois, an insurance broker must exercise competence and skill when rendering the service of procuring insurance. (*Shults v. Griffin-Rahn Insurance Agency, Inc.* (1990), 193 Ill. App. 3d 453, 550 N.E.2d 232.) "A broker is bound to exercise reasonable skill and diligence in the transaction of the business entrusted to him, and will be responsible to his principal for any loss resulting from his failure to do so." (*Shults v. Griffin-Rahn Insurance Agency, Inc.*, 193 Ill. App. 3d at 456, 550 N.E.2d at 234.) With respect to the insured, the insurance broker's principal function is to faithfully negotiate and procure a policy according to his client's wishes and requirements. (*Shults v. Griffin-Rahn Insurance Agency, Inc.*, 193 Ill. App. 3d 453, 550 N.E.2d 232.) The relationship between an insured and his broker, acting as the insured's agent, is a fiduciary one, despite the fact that the broker may be compensated by a third party. (*Shults v. Griffin-Rahn Insurance Agency, Inc.*, 193 Ill. App. 3d 453, 550 N.E.2d 232.) The existence of a duty, a legal obligation to conform one's conduct to a certain standard for the benefit or protection of another, is a matter

of law to be decided by the trial court. *Shults v. Griffin-Rahn Insurance Agency, Inc.*, 193 Ill. App. 3d 453, 550 N.E.2d 232.

■ The economic loss doctrine applies to the service industry only where the duty of the party performing the service is defined by the contract between him and his client. (*Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.* (1994), 159 Ill. 2d 137, 636 N.E.2d 503.) Where a duty arises outside of that contract, the doctrine does not prohibit recovery under a tort theory for the negligent breach thereof. (*Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 636 N.E.2d 503.) Therefore, the narrow question to be decided in this case, involving professional malpractice by an insurance broker, is whether the duty a broker owes to his insured is defined by the contract or is extracontractual in nature.

In *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, our supreme court held that an accountant's knowledge and expertise cannot be memorialized in contract terms, as it is expected independent of his contractual obligations. The court further held that "[w]hether the professional produces a legal brief or a financial statement, the value of the services rendered lies in the ideas behind the documents, not in the documents themselves." (*Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d at 163, 636 N.E.2d at 515.) Thus, the court ruled that the "[a]pplication of the *Moorman* doctrine limiting recovery of purely economic losses to contract *** is inappropriate where a relationship results in something intangible." (*Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d at 164, 636 N.E.2d at 515.) Finding that the duty to observe reasonable professional competence is independent of any contract, it found that the economic loss doctrine does not bar recovery under a tort theory for the breach of a duty that exists independently of a contract. *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 636 N.E.2d 503.

In the present case, Deitelbaum agreed to procure health insurance coverage suitable to plaintiffs' needs. Thereafter, plaintiffs fully satisfied all conditions and requirements in order to obtain health insurance, including the payment of certain sums of money. Deitelbaum falsely informed plaintiffs that he had obtained health insurance for them. He failed to do so.

When asked by plaintiffs whether he had secured such coverage, he gave plaintiffs bogus insurance identification cards containing their names and addresses. This hoax was revealed after one of the plaintiffs was hospitalized and required medical attention. Thereaf-

ter, Deitelbaum purportedly secured coverage for them from a different insurance company. However, it was later revealed that this carrier was not authorized to issue insurance in Illinois.

■ We hold that·under these facts and circumstances, an insurance broker, admittedly having a fiduciary duty to an insured, is in no different position than an attorney or an accountant in relationship to plaintiffs. (See *Collins v. Reynard* (1992), 154 Ill. 2d 48, 607 N.E.2d 1185; *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 636 N.E.2d 503; *Lake County Grading Co. of Libertyville, Inc. v. Great Lakes Agency, Inc.* (1992), 226 Ill. App. 3d 697, 589 N.E.2d 1128.) Because plaintiffs were relying on his knowledge and expertise, the value of Deitelbaum's services lay beyond the policy, which is tangible in nature. (*Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 636 N.E.2d 503.) Moreover, Deitelbaum breached his duty to exercise reasonable skill and diligence in obtaining health insurance for plaintiffs. We find that this failure was a breach of his duty to observe reasonable professional competence which existed independently of the insurance policy or contract. (*Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 636 N.E.2d 503.) We therefore find that Deitelbaum's duty to plaintiffs, his insureds, in performing insurance brokerage services was not solely defined by contract, but rather was extracontractual in nature. (*Lake County Grading Co. of Libertyville, Inc. v. Great Lakes Agency, Inc.*, 226 Ill. App. 3d 697, 589 N.E.2d 1128.) As such, the economic loss doctrine does not bar plaintiffs' recovery of their economic damages under a tort theory for Deitelbaum's negligent breach. *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 636 N.E.2d 503.

Accordingly, we hold that the trial court's decision to dismiss with prejudice counts I and II of plaintiffs' first-amended complaint was incorrect.

For the reasons stated, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

EGAN and RAKOWSKI, JJ., concur.