GARY MASON, Plaintiff-Appellant, v. AMERICAN NATIONAL FIRE INSURANCE COMPANY, a Member of Great American Insurance Companies, Defendant-Appellee and Third-Party Defendant (Joseph A. DeSollar et al., Third-Party Plaintiffs).—GARY MASON, Plaintiff-Appellee, v. AMERICAN NATIONAL FIRE INSURANCE COMPANY, a Member of Great American Insurance Companies, Defendant (Joseph A. DeSollar et al., Defendants-Appellants).

Fourth District   Nos. 4—97—0544, 4—97—0598 cons.

Argued February 17, 1998.—Opinion filed March 20, 1998.

Stephen M. Morris (argued) and Scott E. Umland, both of James L. Hafele & Associates, P.C., of Peoria, for appellant.

Robert G. Day, Jr. (argued), of Law Offices of Day & Day, of Peoria, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On August 23, 1993, plaintiff, Gary Mason, filed a complaint in the circuit court of Cass County against defendants, American National Fire Insurance Company (ANFI) (a subsidiary of Great American Insurance Companies), Joseph A. DeSollar (DeSollar), and DeSollar Agency, Inc. (Agency). The complaint alleged that for the crop year 1992, ANFI had issued to plaintiff, through the Agency, a multiperil crop insurance policy (MPCI) and a multiperil disappearing deductible policy (MP-DD). The thrust of the complaint was that ANFI's agents, DeSollar and the Agency, promised plaintiff the MP-DD policy would supplement the MPCI policy in such a way that

plaintiff would have 100% coverage for crop losses for that year. The complaint then alleged plaintiff had a substantial corn loss in 1992 as a result of flooding, the MP-DD policy did not provide that coverage, and ANFI failed and refused to pay the amount requested.

On April 24, 1996, the circuit court granted ANFI's motion for summary judgment and plaintiff moved for leave to file a sixth-amended complaint against ANFI, which was denied on August 14, 1996. That order was made appealable on May 29, 1997, by entry of an order pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). However, the circuit court did permit plaintiff to file a sixth-amended complaint against DeSollar and the Agency. On March 18, 1997, the court entered summary judgment in the sum of $84,860.30 plus costs in favor of plaintiff and against DeSollar and the Agency on that sixth-amended complaint. That order was also made appealable by the entry of a Rule 304(a) finding on May 29, 1997. Plaintiff has appealed the August 14, 1996, order, and DeSollar and the Agency have appealed the March 18, 1997, order. The foregoing appeals consist of our cases Nos. 4—97—0544 and 4—97—0598, respectively, and are consolidated on appeal. Still pending in the circuit court is a third-party complaint by DeSollar and the Agency against ANFI for indemnity and contribution.

Plaintiff maintains the circuit court erred in denying him leave to file a sixth-amended complaint after entering summary judgment for ANFI. We disagree and affirm the summary judgment in favor of ANFI. DeSollar and the Agency contend the court erred in granting plaintiff summary judgment against them. We also disagree with that assertion and affirm that summary judgment.

Understanding the nature of the insurance policies involved is necessary for an understanding of the matters before us. The MPCI insured plaintiff's corn crop to the extent of 65% of his actual production history (APH). Thus, the policy was described as being "35% deductible." The record indicates the policy covered 1,033.5 acres planted in corn. Plaintiff listed his APH as 102 bushels per acre and his "price election" as $2.30 per bushel. A full crop would have been 105,417 bushels (1,033.5 acres multiplied by 102 bushels per acre). With a full crop, he would have grossed $242,459.10 (105,417 bushels multiplied by $2.30 per bushel). Under the MPCI policy, he was guaranteed a return that would equal 65% of a full crop, or 68,521.05 bushels (105,417 bushels multiplied by 65%). Plaintiff actually had a yield of 49,996 bushels. Accordingly, ANFI paid plaintiff $42,608 for his loss under the MPCI policy (68,521.05 guaranteed bushels minus 49,996 actual bushels multiplied by $2.30 per bushel).

The MP-DD policy was more complicated. It provided for 100%

payment for crop loss, but it had a limiting provision that no liability for such payment would arise "until the payable loss for the insurance unit(s) [(the base policy)] exceed[ed] *** 46.15% (30/65) of the amount of insurance for LEVEL II (65%) coverage." Although the policy and accompanying materials do not explain the 46.15% figure, that figure is apparently designed to prevent the MP-DD endorsement from ever paying more than is paid by the basic policy. (When the crop is 29.9% of the APH, the MP-DD endorsement will pay for 35% of the APH and the basic policy will pay for 35.1% of the APH; if the basic policy pays for less than 35% of the loss, the MP-DD endorsement will pay nothing.) Here, plaintiff's APH was 102 bushels per acre and his guarantee under the MPCI policy (65%) was slightly over 66 bushels per acre. Plaintiff actually harvested 48.38 bushels per acre (49,996 bushels divided by 1,033.5 acres). Therefore, his "payable loss" was approximately 17 bushels per acre. However, 46.15% of the level II coverage of about 66 bushels per acre was approximately 30 bushels per acre. Thus, plaintiff's 17 bushel-per-acre "payable loss" did not trigger operation of the MP-DD policy, and plaintiff got no benefit from the policy and would not have done so unless his loss was much larger.

The parties do not dispute that (1) for the 1991 crop year, plaintiff had a crop insurance policy with a company called Key State that provided plaintiff with 100% coverage for crop loss; (2) Key State was no longer willing to write such a policy for plaintiff; and (3) plaintiff sought such coverage through DeSollar and the Agency. In his discovery deposition, DeSollar stated (1) ANFI had a policy that would give plaintiff the 100% coverage he sought; (2) MP-DD was the 100% policy and it would cover any loss not covered by the MPCI; (3) after plaintiff finished filling out certain forms, DeSollar believed plaintiff was receiving the same coverage as he had under the Key State policy; and (4) after plaintiff's claim for 100% coverage by ANFI, DeSollar received an endorsement from ANFI that did not give plaintiff the coverage he had said it would.

Over a three-year period, plaintiff filed several amended complaints. In the process, the circuit court had correctly ruled that under the express terms of the MP-DD plaintiff was not entitled to any recovery against ANFI. Plaintiff had proceeded on a theory that DeSollar and the Agency were agents of ANFI and, thus, ANFI would be liable for their promises or deceptions, but eventually conclusive evidence was presented showing that DeSollar and the Agency were brokers and not agents of ANFI. Plaintiff then changed his theory to contend that ANFI was guilty of consumer fraud and deception, and this was the thrust of the proposed sixth-amended complaint.

■ We consider first the propriety of the denial of plaintiff's motion to file a sixth-amended complaint against ANFI. Section 2—1005(g) of the Code of Civil Procedure provides that "[b]efore or after the entry of a summary judgment, the court shall permit pleadings to be amended upon just and reasonable terms." 735 ILCS 5/2—1005(g) (West 1996). The leading case on the filing of a motion to file an amended complaint after an adverse summary judgment is *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 586 N.E.2d 1211 (1992), where the Supreme Court of Illinois held the trial court had erred in denying such a motion to amend.

The *Loyola Academy* court noted the trial court had such discretion in ruling on a motion to amend after summary judgment that it would not find the denial of that type of motion "prejudicial error unless there has been a *manifest abuse* of such discretion." (Emphasis added.) *Loyola Academy*, 146 Ill. 2d at 273-74, 586 N.E.2d at 1216. The factors to consider were stated to be whether (1) the proposed amendment would cure the defective pleadings, (2) other parties would sustain prejudice or surprise because of the amendment, (3) the proposed amendment was timely, and (4) previous opportunities to amend the pleading could be identified. *Loyola Academy*, 146 Ill. 2d at 273, 586 N.E.2d at 1215-16.

■ Plaintiff's proposed sixth-amended complaint did not cure the defect in the previous complaints in that those complaints were based upon breach of contract by ANFI through DeSollar, its agent, and a conclusive showing was made that no such agency existed. The proposed new complaint was directed toward a new theory of deceptive practice in advertising (consumer fraud) and negligent misrepresentation. While ANFI was not taken by surprise by these allegations, they did open up a new concept concerning a difficult interpretation of the MP-DD policy and how it should be advertised.

The foregoing problem ties in with the question of whether the attempt to appeal was timely. Amendment was sought 42 months after the alleged crop loss, 40 months after ANFI denied plaintiff's claims, and over 33 months after the original complaint was filed. Plaintiff had been permitted five earlier attempts to state a cause of action and the case was no longer at the pleading stage. See *Saieva v. Budget Rent-A-Car*, 227 Ill. App. 3d 519, 530-31, 591 N.E.2d 507, 514-15 (1992). Considering the substantial deference given by reviewing courts to trial courts under *Loyola Academy* in denying requests to replead after summary judgments, we determine the circuit court here did not breach its discretion in denying leave to file a sixth-amended complaint.

Plaintiff complains the circuit court should have allowed him to

file his sixth-amended complaint after summary judgment was entered against him because, at nearly the same time, the court allowed DeSollar and the Agency to file a third-party complaint against ANFI on basically the same grounds as the proposed sixth-amended complaint. The fact that the third-party complaint is an original pleading seeking contribution and indemnity if DeSollar and the Agency are liable and plaintiff's pleading was a sixth-amended complaint is enough to uphold the discretion of the circuit court in allowing one pleading to be filed and not the other.

■ The summary judgment in favor of plaintiff and against DeSollar and the Agency was based on a theory that, under the undisputed facts, DeSollar and the Agency had promised plaintiff the additional policy they obtained would give him 100% coverage for crop loss. The sum of $84,860.30 was the amount, together with the $42,608 paid by ANFI to plaintiff under the MPCI policy, that plaintiff would be receiving from a 100% yield. DeSollar and the Agency maintain summary judgment was error because, under the undisputed facts, a factual question existed as to whether they had acted in good faith and without negligence in obtaining the insurance for plaintiff. *Connelly v. Robert J. Riordan & Co.*, 246 Ill. App. 3d 898, 901, 617 N.E.2d 76, 78 (1993); *Shults v. Griffin-Rahn Insurance Agency, Inc.*, 193 Ill. App. 3d 453, 456, 550 N.E.2d 232, 234 (1990). That would have been true here if plaintiff had merely charged them, in tort, with breach of duty in obtaining insurance.

However, plaintiff's action is not for a breach of fiduciary duty. The action is for a breach of a promise, and the broker is liable for a breach of promise regardless of his diligence in attempting to obtain an insurance policy sought by the customer. *Scarsdale Villas Associates, Ltd. v. Korman Associates Insurance Agency, Inc.*, 178 Ill. App. 3d 261, 264, 533 N.E.2d 81, 83 (1988). The circuit court properly entered summary judgment for plaintiff and against DeSollar and the Agency.

As an alternative argument, DeSollar and the Agency assert that rather than a judgment for $84,860.30, the judgment should have been for $59,480.03 because, under DeSollar and the Agency's interpretation of the MP-DD endorsement, the "payable loss" was not the amount of loss payable under the MPCI provision but also the loss payable under the MP-DD provision. They maintain the policy is ambiguous and should be interpreted against the insurer. This makes no sense because the MP-DD endorsement clearly states that nothing is payable under the MP-DD "until the payable loss exceeds *** 46.15% (30/65) of the amount of insurance for LEVEL II (65%) coverage." Thus, no loss can become payable under the MP-DD until the payable loss under the MPCI reaches a level not attained here.

DeSollar and the Agency essentially argue that the trial court should have required the MP-DD endorsement to pay more than what it was ordered to pay and that DeSollar and the Agency should be given credit for that additional amount, even though the insured received no credit. As explained above, we disagree that the trial court committed error. We also note a problem in cases like this, that allowing interlocutory appeals under Rule 304(a) may create the possibility of inconsistent results, where a portion of the case becomes final while the same issues remain viable as to other portions of the case.

Accordingly, as indicated, we affirm the summary judgment in case No. 4—97—0544 in favor of ANFI and against plaintiff and the judgment denying plaintiff's leave to file a sixth-amended complaint. We also affirm the summary judgment in the sum of $84,860.30 plus costs in case No. 4—97—0598 in favor of plaintiff and against DeSollar and the Agency.

Affirmed.

KNECHT and COOK, JJ., concur.