**STEINER CORPORATION, a Nevada Corporation, Carol S. McCormick, Administrator of the Steiner Corporation Retirement Plan, and Steiner Corporation Retirement Plan, Plaintiffs,**

v.

**JOHNSON & HIGGINS OF CALIFORNIA, a California corporation, Donald F. Reeves, and Roy J. Bertoldo, Defendants.**

No. 88–CV–410 G.

United States District Court,
D. Utah,
Central Division.

Sept. 29, 2000.

Jay B. Bell, of Fabian & Clendenin, Salt Lake City, UT, for plaintiffs.

Christine Banks, William A. Carpenter, Kirstie A. McCornock, John Edward Hurley, Jr., of McCutchen, Doyle, Brown & Enersen, San Francisco, CA; David A. Greenwood of Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, UT, for defendants.

## ORDER DENYING DEFENDANTS LEAVE TO AMEND TO PLEAD THE "ECONOMIC LOSS RULE"

J. THOMAS GREENE, District Judge.

This matter is before the court on defendants' Motion for Leave to Amend Answer. The matter was fully briefed by the parties and oral argument on the motion was presented to the court during the hearing on April 25, 2000, at which time argument was also offered as to the issues remanded by the Tenth Circuit in its 1998 appellate decision, reported at *Steiner Corp. v. Johnson & Higgins*, 135 F.3d 684 (10th Cir.1998) ("*Steiner II*").

Now, being fully advised, the court enters its Order Denying Defendants Leave to Amend to Plead the "Economic Loss Rule". This order does not reach the remanded issues concerning causation and damages, which issues are addressed in a separate simultaneously promulgated order.

Defendant, invoking Federal Rules of Civil Procedure 15(a) and 15(b), has moved this court for leave to amend its answer to add

the so called "economic loss rule" as a defense. At this late stage in the proceedings, Rule 15(a) would allow defendants to amend their Answer "only by leave of court or by written consent of the adverse party." Fed. R. Civ. Pro. 15(a). Under Rule 15(b), the court "may allow" defendants to amend their Answer to raise issues not raised by the original pleadings only where those issues "are tried by express or implied consent of the parties." Fed. R. Civ. Pro. 15(b).

Defendants' motion is denied on several grounds. The motion under Rule 15(a) is untimely, and is denied on that basis. The motion under Rule 15(b) is disallowed because defendants are belatedly attempting to raise the economic loss rule as a new defense, which does not fit within the conception of conforming pleadings to proof. Finally, defendants' motion is denied, as to both subsections, because the proposed amendment would be futile.

## I. MOTION UNDER 15(a) UNTIMELY

■ Whether to grant leave to amend under Rule 15(a) is within the trial court's discretion. *See Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 799 (10th Cir.1998). Defendants attempt, for the first time, to raise the economic loss rule as a complete defense to Plaintiffs' professional malpractice claim.

The economic loss rule has been recognized in Utah since May, 1994, when the Utah Court of Appeals applied it in *Maack v. Resource Design & Constr., Inc.*, 875 P.2d 570, 579–81 (Utah App.1994) to bar a negligent construction claim.[1]

■ The first Tenth Circuit decision in this case was issued July, 1994, after publication of the *Maack* decision. *See Steiner Corp. Retirement Plan v. Johnson & Higgins*, 31 F.3d 935, 940 (10th Cir.1994), *cert.*

*denied*, 513 U.S. 1081, 115 S.Ct. 732, 130 L.Ed.2d 635 (1995) (*"Steiner I"*). The economic loss rule was not presented at the circuit level on the first appeal. After the case was initially remanded, the parties submitted briefs to this court on the remanded issues and oral argument was presented on September 8, 1995. Defendants could have raised the economic loss rule as a defense at that time but did not do so. Defendants also could have but failed to present the economic loss rule to the Tenth Circuit panel as an alternative ground for affirmance during the second appeal, along with the several alternative grounds that they did urge. *See Steiner II*, 135 F.3d 684 at 692–94. Finally, defendants could have but did not propose that the question be certified to the Utah Supreme Court along with the two questions that were certified, on defendants' motion. *See Steiner Corp. v. Johnson & Higgins*, 996 P.2d 531 (Utah 2000).

The Tenth Circuit "ha[s] often found untimeliness alone a sufficient reason to deny leave to amend, 'especially when the party filing the motion has no adequate explanation for the delay.'" *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir.1994) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365–66 (10th Cir.1993)).

Since defendants have waited until this late date in these proceedings to attempt to raise a new defense to plaintiffs' claims, defendants' motion is untimely and is therefore denied.[2]

## II. MOTION UNDER 15(b) IMPROPER

■ "The decision to grant or deny an amendment under Rule 15(b) is within the discretion of the district court...." *Rios v. Bigler*, 67 F.3d 1543, 1551 (10th Cir.1995). In this case, the economic loss rule was never

---

1. This was apparently the first Utah appellate case to apply the economic loss rule as a bar to recovery. However, the first Utah case to discuss the rule was *W.R.H., Inc. v. Economy Builders Supply*, in which the Utah Supreme Court refused to extend the rule to bar a negligent manufacture claim, perceiving it to be a "strict liability doctrine." 633 P.2d 42, 44–46 (Utah 1981).

2. *See Franks v. Nimmo*, 796 F.2d 1230, 1238 n. 4 (10th Cir.1986) (holding that "motion [for leave

to amend], made two years after the case was filed and after discovery had been completed and partial summary judgment granted, was untimely"); *Landon v. Northern Natural Gas Co.*, 338 F.2d 17, 20 (10th Cir.1964) (holding that "[i]t was within the discretion of the trial court to refuse to permit an amendment of the Appellant's answer" where two years had elapsed since filing of answer and "no reason was shown by Appellant to the trial court why the issue was not raised earlier").

raised as a defense until defendants filed their motion to amend. Defendants did not identify it as an issue in the pretrial order, raise it as a defense after the first remand, urge it as an alternative ground for affirmance on the second appeal, or exhibit any intention of relying upon it when proposing that questions should be certified to the Utah Supreme Court. Nor can defendants argue that the issue was tried by implied or express consent of the parties. In this regard, the Tenth Circuit previously has rejected such attempted amendment, stating:

> This was not one of the issues in the original trial. Any evidence introduced at the time of the trial tending to bear on the [defense] was incidental to [other issues which were raised by the pleadings] and was not introduced for the purpose of this defense. An amendment [at this stage in the litigation] stating ... a new defense is not permissible under the guise of conforming the pleadings to the proof ....

*Simms v. Andrews*, 118 F.2d 803, 807 (10th Cir.1941). Accordingly, defendants' motion for leave to amend under Rule 15(b) is denied.

## III. AMENDMENT WOULD BE FUTILE

■ " 'A court may refuse to allow leave to amend pleadings when the proposed changes would be futile.' " *Reagan v. Bankers Trust Co.*, 863 F.Supp. 1511, 1518 (D.Utah 1994) (Jenkins, J.) (citations omitted).[3] In this case, it would be futile for defendants to amend their Answer because the economic loss rule does not bar plaintiffs from recovering losses, if any, caused by defendants' professional malpractice.

The economic loss rule has its origins in products liability law.[4] Indeed, in *W.R.H., Inc. v. Economy Builders Supply*, the first Utah case to discuss the economic loss rule, the Utah Supreme Court identified it as a "strict liability doctrine." 633 P.2d 42, 45 (Utah 1981). The seminal case on the economic loss rule is *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965). In *Seely*, Chief Justice Traynor, writing for the majority of the California Supreme Court "refused to extend the concept of strict liability to include economic damages resulting from the failure of a vehicle manufactured by the defendant to meet the specific business needs of the plaintiff." *W.R.H.*, 633 P.2d at 44 (explaining *Seely*).

Similarly, the landmark case of *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), cited in support of adoption of the rule by both the Utah Court of Appeals and the Utah Supreme Court,[5] was a products liability case. In *East River*, an admiralty case, the court adopted the *Seely* approach, holding that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." *Id.* at 871, 106 S.Ct. 2295. The *East River* court was prompted to adopt the rule out of concern that if products liability "were allowed to progress too far, contract law would drown in a sea of tort." *Id.* at 866, 106 S.Ct. 2295. The court elucidated:

> In products-liability law, where there is a duty to the public generally, foreseeability

---

3. *See also Castleglen Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1584 (10th Cir.1993) (holding that leave to amend may be denied "upon a showing of undue delay, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing party, or *futility of amendment*") (emphasis added).

4. See George Anthony Smith, *The Continuing Decline of the "Economic Loss Rule" in Construction Litigation*, Construction Lawyer 1, 1 (Nov. 1990) (stating: "The 'economic loss rule' is a concept and principle that developed in conjunction with products liability law."); Frank Nussbaum, *The Economic Loss Rule and Intentional*

torts: A Shield or a Sword?, 8 St. Thomas L.Rev. 473, 481 (1996) (stating: "In its original context, the economic loss rule meant that there can be no tort liability when a product defect causes only economic losses.")

5. *See Maack v. Resource Design & Constr., Inc.*, 875 P.2d 570, 579–80 (Utah App.1994) (citing *East River* in support of its statement that "[t]he 'economic loss rule' is the majority position that one may not recover 'economic' losses under a theory of non-intentional tort"); *American Towers Owners Assoc., Inc. v. CCI Mechanical, Inc.*, 930 P.2d 1182, 1189 (Utah 1996) (quoting this language from *Maack* along with the citation to the *East River* case).

is an inadequate brake. Permitting recovery for all foreseeable claims for purely economic loss could make a manufacturer liable for vast sums. It would be difficult for a manufacturer to take into account the expectations of persons downstream who may encounter its product. In this case, for example, if the charterers—already one step removed from the transaction—were permitted to recover their economic losses, then the companies that subchartered the ships might claim their economic losses from the delays, and the charterers' customers also might claim their economic losses, and so on. "The law does not spread its protection so far."

*Id.* at 876, 106 S.Ct. 2295.

The economic loss rule was first embraced in Utah in *Maack v. Resource Design & Constr., Inc.,* 875 P.2d 570 (Utah App.1994).[6] In *Maack,* the subsequent purchasers of a home brought suit against the building contractor for loss of value and costs of repair due to alleged defects in the design and construction of the home, which resulted in water leakage. *See id.* at 573–74. In affirming summary judgment for the defendants on plaintiffs negligent construction claim, the Utah Court of Appeals held that "the [plaintiffs'] claims for purely economic damages based upon allegations of negligent design and construction must fail." *Id.* at 581.

In the more recent case of *American Towers Owners Assoc., Inc. v. CCI Mechanical, Inc.,* the Utah Supreme Court held that purely economic losses are not recoverable based upon claims of "negligent design and construction of improvements to real property." 930 P.2d 1182, 1190 (Utah 1996). In support of this conclusion, the *American Towers* Court reasoned:

The policy reasons supporting the economic loss rule are sound. When a product does not perform or last as long as the consumer thinks it should, the claim pertains to the quality of the product as measured by the buyer's and user's expectations—expectations which emanate solely from the purchase transaction. Thus, contract principles resolve issues when the

product does not meet the user's expectations, while tort principles resolve issues when the product is unsafe to person or property.

\* \* \*

Builders who construct low quality housing that does not cause injury to persons or property may still be held liable for damages, but that liability should be defined by the contract between the parties. The law of torts imposes no standards on the parties' performance of the contract; the only standards are those agreed upon by the parties. Tort law is concerned only with the *safety* of a product or an action.

\* \* \*

These rationales are particularly applicable to claims of negligent construction. Construction projects are characterized by detailed and comprehensive contracts that form the foundation of the industry's operations. Contracting parties are free to adjust their respective obligations to satisfy their mutual expectations.

*Id.* Ultimately, the *American Towers* court held: "To allow the claim would be to impose the [subsequent purchasers'] economic expectations upon parties whom [they] did not know and with whom they did not deal and upon contracts to which they were not a party.... [N]o cause of action for negligence exists under these circumstances." *Id.* at 1192.

Utah has never recognized the economic loss rule as applicable except as against claims of negligent design and construction of improvements to real property. Notwithstanding, defendants would have this court extend the rule well beyond this limited context and apply the economic loss rule to professionals, such as lawyers and accountants, which would excuse defendants from responsibility for damages even if caused by their professional malpractice.

Defendants make much of the fact that, in *American Towers,* the Utah Supreme Court held the economic loss rule applicable to

---

**6.** The Utah Supreme Court first discussed the rule in 1981, refusing to apply it to shield negli-

gent manufacturers from liability for economic losses. *See W.R.H.,* 633 P.2d at 44–46.

claims against design professionals. *See American Towers*, 930 P.2d at 1191–92. Defendants argue that this "evidenced a willingness to extend the economic loss doctrine to all negligence claims arising out of professional services." (Memorandum in Support of Motion for Leave to Amend Answer at 6.) However, this Court does not read *American Towers* so broadly and does not interpret it to stand for the end of all recovery for malpractice in tort.[7]

■ The policy reasons underlying the economic loss rule set forth in *American Towers* are served by its application to products liability claims, and "are particularly applicable to claims of negligent construction." *American Towers*, 930 P.2d at 1190. However, these policies would not be served by extending the rule to bar plaintiffs' claim of professional malpractice against its actuary.

Actions against professionals often involve purely economic loss without any accompanying personal injury or property damage. Extending the economic loss rule to these cases would effectively extinguish such causes of action. Attorneys and other professionals might support a rule which would serve as a complete bar to claims of malpractice and consequently eliminate the necessity of paying malpractice insurance premiums. However, this court does not believe that the Utah Supreme Court intended such a result and refuses to render an "*Erie* guess" that the Utah high court would so extend the reach of the rule. This court agrees with the position adopted by the Supreme Court of Florida when it stated:

> [While] the economic loss rule may have some genuine, but limited, value in our damages law, [it was] never intended to bar well-established common law causes of action, such as those for neglect in providing professional services. Rather, the rule was primarily intended to limit actions in the product liability context, and its application should generally be limited to those contexts or situations where the policy considerations are substantially identical to those underlying the product liability-type analysis.

*Moransais v. Heathman*, 744 So.2d 973, 983 (Fla.1999).

Based upon the foregoing it is manifest that the economic loss rule has no application to plaintiffs' claim of professional malpractice and does not shield defendants from liability for the damages, if any, caused by their failure to meet the standard of care in the

---

7. In holding the economic loss rule applicable to design professionals, the *American Towers* court apparently relied upon the Illinois Supreme Court decision *2314 Lincoln Park West Condominium Ass'n v. Mann*, 136 Ill.2d 302, 144 Ill. Dec. 227, 555 N.E.2d 346 (1990). While the Illinois Supreme Court has held the economic loss rule applicable to architects and other design professionals, it has refused to extend the doctrine to bar malpractice claims against attorneys, accountants, and insurance brokers. *See Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill.2d 137, 201 Ill.Dec. 71, 636 N.E.2d 503, 514–15 (1994), *cert. denied*, 513 U.S. 947, 115 S.Ct. 358, 130 L.Ed.2d 312 (1994) (holding the economic loss rule inapplicable to claims of accountant malpractice); *Collins v. Reynard*, 154 Ill.2d 48, 180 Ill.Dec. 672, 607 N.E.2d 1185 (1992) (holding the economic loss doctrine inapplicable to claims of legal malpractice); *Kanter v. Deitelbaum*, 271 Ill.App.3d 750, 208 Ill.Dec. 215, 648 N.E.2d 1137, 1140 (1995) (holding that the economic loss rule did not bar suit against an insurance broker for breach of his duty to observe reasonable professional competence in obtaining health insurance for plaintiffs). In making this distinction, the Illinois Supreme Court reasoned:

> The evolution of the economic loss doctrine shows that the doctrine is applicable to the service industry only where the duty of the party performing the service is defined by the contract that he executes with his client. Where a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty.

*Congregation of the Passion*, 201 Ill.Dec. 71, 636 N.E.2d at 514. The Illinois Supreme Court further reasoned that where professionals are in the business of supplying information for the guidance of others in their business transactions "the value of the services rendered lies in the ideas" and is dependent largely upon the professional's "knowledge and expertise [which] cannot be memorialized in contract terms, but is expected independent of the [professional's] contractual obligations." *Id.* at 515.

Although the Utah Supreme Court relied on Illinois precedent in extending the economic loss rule to bar claims against design professionals, Illinois' reluctance to allow the economic loss rule to eviscerate professional malpractice claims against accountants, attorneys, and the like argues against the broad reading of *American Towers* suggested by Defendants.

actuarial community. Accordingly, defendants' request for leave to amend their Answer is DENIED.

IT IS SO ORDERED.